## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re | ) | |
| | ) | **Chapter 11** |
| | ) | |
| **GLOUCESTER ENGINEERING CO.,** | ) | **Case No. 10-12967-JNF** |
| **INC.,** | ) | |
| Debtor. | ) | |
| | ) | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION

WHEREAS, on March 23, 2010 (the "Petition Date"), an involuntary petition for relief under Chapter 7 of Title 11 of the United States Code, as amended (the "Bankruptcy Code") was filed against the above-captioned debtor (the "Debtor");

WHEREAS, on June 25, 2010 (the "Order for Relief Date"), an order for relief was entered and this case was converted to one under Chapter 11 of the Bankruptcy Code (the "Bankruptcy Code");

WHEREAS, on September 28, 2010, the Debtor filed its Plan of Reorganization and on November 16, 2010, the Debtor filed its First Amended Plan of Reorganization (the "Plan") and its First Amended Disclosure Statement with respect to First Amended Joint Plan of Reorganization (the "Disclosure Statement");[1]

---

[1] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Plan. Any term used in the Plan or this Confirmation Order that is not defined in the Plan or this Confirmation Order, but that is used in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, shall have the meaning ascribed to that term in the Bankruptcy Code or such rules.

WHEREAS, on November 16, 2010, this Court entered an order (the "Solicitation Procedures Order"), pursuant to which the Court, among other things: (i) approved the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 3017, (ii) scheduled a hearing for December 20, 2010 to consider confirmation of the Plan (the "Confirmation Hearing"); and (iii) established certain procedures for the solicitation and tabulation of votes with respect to the Plan;

WHEREAS, in accordance with the Solicitation Procedures Order and Bankruptcy Rule 3017(d), the Debtor timely mailed solicitation materials in respect of the Plan (the "Solicitation Packages"), including the Disclosure Statement (with the Plan annexed), the Solicitation Procedures Order and, where appropriate, a ballot (the "Ballots") to creditors and parties-in-interest;

WHEREAS, on December 17, 2010, the Debtor filed a Report of Plan Voting certifying the results of the Ballots cast;

WHEREAS, on December 17, 2010, the Affidavit of Amanda Wells in Support of Confirmation of the Plan (the "Confirmation Affidavit") was filed with the Court;

WHEREAS, the Court held the Confirmation Hearing on December 20, 2010;

WHEREAS, the Court has reviewed and considered the Plan, the Disclosure Statement, the Solicitation Procedures Order, the Confirmation Affidavit, the Report of Plan Voting, and all other pleadings, statements and comments submitted to the Court in connection with the Confirmation Hearing; and

WHEREAS, the Court has (i) considered the statements of counsel at the Confirmation Hearing, (ii) considered all evidence proffered or adduced at the Confirmation Hearing, and (iii) taken judicial notice of the entire record of the Chapter 11 Case.

NOW, THEREFORE, after due deliberation and good cause appearing therefor, the Court hereby makes and issues the following Confirmation Order.

## I.  FINDINGS OF FACT AND CONCLUSIONS OF LAW[2]

A.  Exclusive Jurisdiction: Venue: Core Proceeding (28 U.S.C. §§ 157 (b)(2) and 1334 (a)). This Court has jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.  Judicial Notice. The Court takes judicial notice of the docket of this Chapter 11 Case maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, all hearing transcripts and all evidence and arguments made, proffered or adduced at the hearings held before the Court during the Chapter 11 Case, including, without limitation, the Confirmation Hearing. The resolutions of any formal or informal objections to confirmation of the Plan, as explained on the record at the Confirmation Hearing, are incorporated herein by reference.

C.  Transmittal and Mailing of Materials; Notice. All due, adequate, and sufficient notices of the Disclosure Statement, the Plan, and the Confirmation Hearing, along with all deadlines for voting on, or filing objections to, the Plan, have been given to all known holders of Claims and/or Equity Interests in accordance with the Bankruptcy Rules and the procedures set out in the Solicitation Procedures Order. The Disclosure Statement, Plan, Ballots, and Solicitation Procedures Order were transmitted and served in substantial compliance with

---

[2] This Confirmation Order constitutes the Bankruptcy Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, as made applicable herein by Bankruptcy Rules 7052 and 9014. Any and all findings of fact herein shall constitute findings of fact even if stated as conclusions of law, and any and all conclusions of law herein shall constitute conclusions of law even if stated as findings of fact.

the Bankruptcy Rules and the Solicitation Procedures Order, and such transmittal and service were adequate and sufficient. Adequate and sufficient notice of the Confirmation Hearing was given in substantial compliance with the Bankruptcy Rules and the Solicitation Procedures Order, and no other or further notice is or shall be required.  All parties in interest in the Chapter 11 Case had a full and fair opportunity to appear and be heard at the Confirmation Hearing.

D.    <u>Solicitation</u>. The solicitation of votes for acceptance or rejection of the Plan complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, all other applicable provisions of the Bankruptcy Code, and all other rules, laws, and regulations and the Solicitation Procedures Order.  Based on the record of the Chapter 11 Case, the Debtor has acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules in connection with the solicitation of votes to accept the Plan.  Accordingly, the Debtor is entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

E.    <u>Burden of Proof</u>. The Debtor has met its burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code as more fully set forth below by a preponderance of the evidence, which is the applicable evidentiary standard in this Court for Confirmation of the Plan.

F.    <u>Acceptance of the Plan by Impaired Classes of Claims</u>.  As evidenced by the Report of Plan Voting, an impaired Class of Claims entitled to vote on the Plan has voted to accept the Plan.

G.    <u>Compromise and Settlement Under the Plan</u>.  Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments under the Plan take into account for and

conform to the relative priority and rights of the Claims in each Class in connection with any contractual, legal and equitable subordination rights relating thereto. As of the Effective Date, any and all such rights described in the preceding sentence are settled, compromised and released pursuant to the Plan. As of the Effective Date, any and all such causes of action, claims and counterclaims are settled, compromised and released pursuant to and as provided in the Plan and this Confirmation Order.

    H. <u>Propriety of Various Agreements and Documents Relating to the Plan</u>. In light of all of the circumstances and the record in the Chapter 11 Case, each transaction contemplated in connection with the Plan, or any other document or agreement that is necessary to implement the Plan, is integral to the terms, conditions and settlements set forth in the Plan and is critical to the implementation of the Plan. All contracts, instruments, releases, agreements and documents related to, or necessary to implement, effectuate and consummate the Plan, including each transaction contemplated in the Plan, are valid, proper and reasonable under the circumstances and due and sufficient notice thereof has been provided in connection with approval of the Disclosure Statement and confirmation of the Plan.

    I. <u>Releases, Discharges, Exculpations and Injunctions</u>. Based upon the facts and circumstances of this Chapter 11 Case, the releases, discharges, exculpations and injunctions set forth in Article XI of the Plan are supported by good and valuable consideration, the adequacy of which is hereby confirmed, are fair, equitable, and reasonable, are supported by the record of this Chapter 11 Case, and are in the best interests of the Debtor, its Estate, and the holders of Claims against the Debtor.

    J. <u>No Regulatory Authority Required</u>. No registration under any applicable federal or state securities laws to the fullest extent permissible under applicable non-bankruptcy

law and under bankruptcy law, including, without limitation, section 1145(a) of the Bankruptcy

Code is required to implement the Plan.

      K.    Compliance with Requirements of Section 1129 of the Bankruptcy Code.

The Plan satisfies all requirements for Confirmation under section 1129 of the Bankruptcy

Code.

      (i)  Compliance with Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

      (ii)  Proper Classification (11 U.S.C. § §1122 and 1123 (a)(1)). In addition to Allowed Administrative Claims, Gap Period Claims, and Priority Tax Claims, which are not classified under the Plan, the Plan designates 5 Classes of Claims and 1 Class of Equity Interests. The Claims or Equity Interests placed in each Class are substantially similar to other Claims or Equity Interests in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such classifications do not unfairly discriminate between holders of Claims or Equity Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

      (iii)  Section 1123(a) - Mandatory Provisions of the Plan.  The Plan fully complies with each requirement of section 1123(a) of the Bankruptcy Code, as set forth below:

      (a)  Section 1123(a)(1).  The Plan properly designates all Claims and Interests that require classification, as required by section 1123(a)(1) of the Bankruptcy Code.  Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Fee Claims, Priority Tax Claims and Gap Period Claims are not required to be designated into Classes.

      (b)  Specify Treatment of Unimpaired Classes (11 U.S.C. §§1123 (a)(2)). The Plan specifies that Classes 1 and 2 are unimpaired, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

      (c)  Specify Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Classes 3, 4, 5, and 6 are impaired under the Plan. Article IV of the Plan specifies the treatment of impaired Claims and Equity Interests, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

      (d)  No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment for each Claim and Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to less favorable treatment with

respect to such Claim or Equity Interest. Critical Suppliers in Class 5 are entitled to the Additional Critical Supplier Distribution, in addition to their participation in the Class 5 Pool, only in the event of acceptance of the Plan and their agreement to enter into post-confirmation critical supplier agreements as set forth in the Plan. The Plan therefore satisfies section 1123(a)(4) of the Bankruptcy Code.

(e) Implementation Of Plan (11 U.S.C. § 1123(a)(5)). The Plan provides adequate and proper means for implementation as set forth in Article V of the Plan, thereby satisfying 11 U.S.C. § 1123(a)(5).

(f) Required Corporate Charter Provisions (11 U.S.C. § 1123(a)(6)). The Plan does not provide for the issuance of nonvoting securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

(g) Selection Of Officers And Directors (11 U.S.C. § 1123(a)(7)). The Plan contains provisions for the management of the Reorganized Debtor that are consistent with the interests of creditors and Equity Interests and with public policy and, accordingly, satisfies the requirements of 11 U.S.C. § 1123(a)(7).

(iv) Discretionary Plan Provisions (11 U.S.C. § 1123(b)). In accordance with section 1123(b) of the Bankruptcy Code, the Plan does not include any provision inconsistent with the applicable provisions of the Bankruptcy Code. The provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code including, without limitation, provisions for (a) certain Classes of Claims and Equity Interests to be unimpaired (b) distributions to Creditors, (c) the rejection or assumption of certain executory contracts and unexpired leases, and (d) the retention of, and right to enforce, sue on, settle or compromise (or to refuse to do any of the foregoing with respect to) certain claims or causes of action against third parties, to the extent not waived or released under the Plan.

(v) Identification of the Plan; Injunction (Fed. R. Bankr. P. 3016(a), (c)). The Plan is dated and identifies the entities submitting it as proponents. Other than conduct otherwise enjoined by the Bankruptcy Code, the Plan describes in specific and conspicuous language all acts to be enjoined and identifies the parties subject to such injunction, in accordance with Bankruptcy Rule 3016(a), (c).

(vi) The Debtor Has Complied with Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtor has complied with all applicable provisions of the Bankruptcy Code, including, without limitation, sections 1123, 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. The Disclosure Statement and the procedures by which the Ballots for acceptance or rejection of the Plan were solicited and tabulated were fair, properly conducted, and in accordance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, and any and all other applicable rules, laws and regulations. Votes with respect to the Plan were solicited in good faith and in a manner

consistent with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and all other applicable rules, laws and regulations.

Based on the record before the Court, the Debtor, the Committee, and each of their current and former officers, directors, employees, members, attorneys, actuaries, financial advisors, accountants, investment bankers, agents, professionals or other representatives have solicited votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code in good faith, within the meaning of section 1125(e) of the Bankruptcy Code, and in compliance with the applicable provisions of the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws and regulations and, accordingly, such parties are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in the Plan.

(vii)   Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Debtor has proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.   The Debtor and each of its attorneys, agents, and financial advisors has acted in good faith, as applicable, in connection with the management and operation of the Debtor and the formulation, negotiation, proposal and implementation of the Plan and every contract, instrument, document or other agreement related thereto.

(viii)   Payments For Services Or Costs And Expenses (11 U.S.C. § 1129(a)(4)). Any payment made or to be made by the Debtor for services or for costs and expenses in or in connection with the bankruptcy case, including all fees and expenses incurred by Professional Persons, or in connection with the Plan and incident to the bankruptcy case, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

(ix)   Directors, Officers, And Insiders (11 U.S.C. § 1129(a)(5)). As set forth in the Disclosure Statement and the Plan, the Debtor has disclosed the identity of insiders and the post-confirmation management of the Reorganized Debtor, thereby satisfying section 1129(a)(5) of the Bankruptcy Code.

(x)   No Rate Changes (11 U.S.C. § 1129(a)(b). The Plan does not provide for any rate changes subject to the jurisdiction of any governmental regulatory commission. Accordingly, section 1129(a)(6) of the Bankruptcy Code is inapplicable to the Plan.

(xi)   Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7)).   The Plan satisfies the "best interests of creditors" test under section 1129(a)(7) of the Bankruptcy Code. With respect to each Impaired Class of Claims or Interests, each Holder of an Allowed Claim or an Allowed Interest in such Class has either accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount such Holder would receive or retain if the Debtor was liquidated on the Effective Date pursuant to Chapter 7 of the Bankruptcy

Code.  Accordingly, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

(xii)  Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).  Impaired Classes of Claims 3 through 5 have either voted to accept the Plan or are deemed to have accepted the Plan.  Holders of Class 6 Equity Interests are deemed to have rejected the Plan. Consequently, the Debtor has satisfied the criteria set forth in section 1129(a)(8) of the Bankruptcy Code.

(xiii)  Treatment of Allowed Administrative Expense Claims and Priority Tax Claims (11 U.S.C. § 1129(a)(9)).  The Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code because, except to the extent the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Allowed Administrative Expense Claims and Fee Claims (11 U.S.C. §507(a)(1)), Priority Claims (11 U.S.C. § 507(a)(3)-(a)(7)), and Priority Tax Claims (11 U.S.C. § 507(a)(8)), shall be treated in accordance with the provisions of section 1129(a)(9) of the Bankruptcy Code.

(xiv)  Acceptance by at Least One Impaired Class (11 U.S.C. § 1129(a)(10)).  All impaired Classes of Claims have accepted or are deemed to have accepted the Plan. Accordingly, the Plan satisfies section 1129(a)(10) of the Bankruptcy Code.

(xv)  Feasibility (11 U.S.C. § 1129(a)(11)).   Other than as provided in the Plan, confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor.  Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

(xvi)  Payment of Fees (11 U.S.C. § 1129(a)(12)).  All fees payable under 28 U.S.C. § 1930 have been paid or will be paid in accordance with Article V of the Plan. Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

(xvii)  Section 1129(a)(13) – Treatment of Retiree Benefits.  In accordance with section 1129(a)(13) of the Bankruptcy Code, the Plan, provides for the payment of retiree benefits for which the Debtor is obligated to pay.  Accordingly, the Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

(xviii)  Sections 1129(a)(14)-(16) – Domestic Obligations, Individual Debtor, or Nonprofit Corporation or Trusts.  The Debtor is not (a) required to pay any domestic support obligations, (b) an individual, or (c) a nonprofit corporation or trust. Accordingly, sections 1129(a)(14) through (16) of the Bankruptcy Code are not applicable to the Plan.

(xix)  Fair and equitable.  (11 U.S.C. §1129(b)(2)(C)).  The Plan is fair and equitable as to the Class 6 Equity Interests, as no holder of an interest junior to such

interests shall receive or retain any property under the Plan on account of such junior interest.

(xx)    No Other Plan (11 U.S.C. § 1129(c)). No other plan of reorganization has been filed in connection with the Chapter 11 Case.

(xxi)    Principal Purpose of Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933 (15 U.S.C. § 77e). Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

L.    Satisfaction of Conditions Precedent.    Each condition precedent to the Confirmation of the Plan, as set forth in Section 9.1 of the Plan, has been satisfied or waived. In accordance with Section 9.1(d) of the Plan, the Debtor and Blue Wolf have confirmed that this condition has been satisfied and the Reorganized Debtor is hereby authorized to enter into a new lease for the Dory Road Property on such terms and conditions acceptable to the Reorganized Debtor and Blue Wolf. Furthermore, each condition precedent to occurrence of the Effective Date, as set forth in Section 9.2 of the Plan, has been satisfied or waived or is reasonably likely to be satisfied.

II.    **ORDER**

NOW THEREFORE, BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSION OF LAW, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.    Confirmation. The Plan, a copy of which is annexed hereto as **Exhibit A**, as modified by the record of the Confirmation Hearing and this Confirmation Order, is hereby approved and confirmed in all respects pursuant to section 1129 of the Bankruptcy Code. If there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control. Unless otherwise provided herein, the

terms of the Plan and the exhibits thereto, as modified hereby, are incorporated by reference into, and are an integral part of, this Confirmation Order. The terms of the Plan shall be effective and binding as of the Effective Date.

2.     Objections. All objections to confirmation of the Plan that have not been withdrawn, waived or settled prior to entry of this Confirmation Order, and all reservations of rights included in such objections, are overruled in their entirety on the merits and all withdrawn objections are deemed withdrawn with prejudice.

3.     Implementation And Consummation Of Plan Documents. In accordance with section 1142 of the Bankruptcy Code, the implementation and consummation of the Plan in accordance with its terms shall be, and hereby is, authorized and approved. Pursuant to section 1142(b) of the Bankruptcy Code, no action of the stockholders, creditors, managers or directors of the Debtor shall be required to authorize the Debtor (i) to effectuate and carry out the Plan or any order of this Court relating thereto, (ii) consummate the transactions contemplated by the Plan, the Disclosure Statement or any order of this Court, or (iii) take any other action contemplated by the Plan, the Disclosure Statement, or any order of this Court as may be necessary or appropriate to implement the Plan, and all such actions are hereby authorized, approved, and to the extent taken prior to the Effective Date, ratified in all respects as if they had been authorized or approved by the unanimous actions of the directors and stockholders of the Debtor. The Debtor and any other person referenced in the Plan shall be, and they hereby are, authorized, empowered and directed to issue, execute, deliver, file and record any documents, whether or not any such document is specifically referred to in the Plan, the Disclosure Statement or any exhibit thereto or this Confirmation Order, and to take any action

necessary or appropriate to consummate the Plan in accordance with its terms without further order of the Court.

4.    Exemption from Transfer Taxes. In accordance with section 1146(c) of the Bankruptcy Code: (a) the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, or the vesting, re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated by the Plan; (b) the making, delivery, creation, assignment, amendment or recording of any note or other obligation for the payment of money or any mortgage, deed of trust or other security interest under, in furtherance of, or in connection with the Plan, the issuance, renewal, modification or securing of indebtedness by such means, including, without limitation, the recording or filing of any of the documents related to any debt financing; and (c) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment. Each recorder of deeds or similar official for any county, city or governmental unit in which any instrument under the Plan is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, transfer tax, intangible tax or similar tax.

5.    Cancellation of Liens against the Debtor's Assets. Except as otherwise provided in the Plan, on the Effective Date, in consideration for the distribution to be made on the Effective Date pursuant to the Plan, all Liens, charges, encumbrances and rights related to any

Claim or Interest against the Debtor and/or its Estate shall be terminated, cancelled, discharged, released and of no effect upon the Effective Date without further act or action by any Person. Any holder of a Lien or Claim shall promptly provide the Reorganized Debtor with an appropriate instrument of cancellation, discharge or release, as the case may be, in suitable form for recording wherever necessary to evidence such cancellation, discharge or release, including the cancellation, discharge or release of any Lien securing such Claim. Upon satisfaction of Allowed Claims, such Liens shall be cancelled, discharged, and released without further act or action by any Person, and the holders of such Liens shall deliver appropriate instruments of cancellation, discharge, or release upon request.

6.     Claims.   The final allowance of a Claim pursuant to the provisions of the Plan or an order of this Court shall not prejudice the rights of the Debtor to investigate or prosecute avoidance actions under Chapter 5 of the Bankruptcy Code, including objections to Claims pursuant to Bankruptcy Code Section 502(d), or to otherwise seek reconsideration of a Claim under Bankruptcy Code Section 502(j).

7.     Provisions of Order Nonseverable and Mutually Dependent. The provisions of this Confirmation Order are nonseverable and mutually dependent.

8.     Retention of Jurisdiction.   Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of this Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction:

(a)     Claims. To determine the allowance, extent, classification, or priority of Claims against the Debtor upon objection by the Reorganized Debtor, the Class 5 Disbursing Agent or any other party in interest, including any and

13

all claims asserted under any Collective Bargaining Agreements, as amended;

(b)    Injunctions, etc.  To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Case on or before the Effective Date with respect to any Person or Entity;

(c)    Professional Fees.  To determine any and all applications for allowance of compensation and expense reimbursement of Professionals for periods before the Effective Date, and objections thereto, as provided for in the Plan;

(d)    Dispute Resolution.  To resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan and/or Confirmation Order and the making of distributions hereunder and thereunder;

(e)    Executory Contracts and Unexpired Leases.  To determine any and all motions for the rejection, assumption, or assignment of executory contracts or unexpired leases, and to determine the allowance and extent of any Claims resulting from the assumption or rejection of executory contracts and unexpired leases;

(f)    Actions.  To determine all applications, motions, adversary proceedings (including any Avoidance Actions and/or Estate Actions), contested matters, actions, and any other litigated matters instituted (either before or after the Effective Date) in the Chapter 11 Case by or on behalf of the Debtor, the Reorganized Debtor or the Class 5 Disbursing Agent;

(g)    General Matters.  To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code or other applicable law;

(h)    Plan Modification.  To modify the Plan under section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes;

(i)    Aid Consummation.  To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person or Entity, to the fullest extent authorized by the Bankruptcy Code, including, without limitation, resolve any disputes of a non-Debtor hereunder or the injunction against acts, employment of process or actions against such non-Debtor arising hereunder;

(j)    Protect Property.  To protect the Property of the Debtor and the Reorganized Debtor from adverse Claims or Liens or interference inconsistent with this Plan, including to hear actions to quiet or otherwise clear title to such property based upon the terms and provisions of this Plan or to determine a purchaser's exclusive ownership of claims and causes of actions retained under this Plan;

(k)    Abandonment of Property.  To hear and determine matters pertaining to abandonment of Property of the Estate;

(l)    Implementation of Confirmation Order.  To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(m)    Final Order.  To enter a final order closing the Chapter 11 Case; and

(n)    Tax Liability.  To determine any tax liability pursuant to section 505 of the Bankruptcy Code.

9.    Administrative Claim Bar Date.  Except for U.S. Trustee Fees and Fee Claims, requests for payment of Administrative Claims (other that Claims under 503(b)(9) of the Bankruptcy Code governed by applicable local rules)  must be filed and served on the Reorganized Debtor (to the attention of Andrew G. Lizotte, Esquire, Hanify & King, P.C., One Beacon Street, Boston, MA 02108 – counsel to the Debtor), no later than January 24, 2011 (the "Administrative Claims Bar Date").  Any Person or Entity that is required to file and serve a request for payment of an Administrative Claim and fails to timely file and serve such request on or before the Administrative Claim Bar Date and contemporaneously served on the Debtor shall be (a) Disallowed without need for entry of an Order, and (b) forever barred, estopped and enjoined from asserting such Claim or participating in distributions under the Plan on account

15

thereof and no objection to such late or unfiled claim shall be necessary. Objections to requests for payment of Administrative Claims (except for Fee Claims) must be filed and served on the Reorganized Debtor and its respective counsel, and the party requesting payment of an Administrative Claim on or before *march 1*____, 2011.

10.   Bar Date for Fee Claims.   Unless otherwise ordered by the Bankruptcy Court, requests for payment of Fee Claims incurred through the Effective Date, must be filed and served on the Reorganized Debtor and its counsel no later than J̶a̶n̶u̶a̶r̶y̶ *Feb. 1* __, 2011 (the "Fee Claim Bar Date"). Any Professional Person that is required to file and serve a request for payment of a Fee Claim and fails to timely file and serve such request, shall be forever barred, estopped and enjoined from asserting such Fee Claim or participating in distributions under the Plan on account thereof. Objections to Fee Claims must be filed and served on the Reorganized Debtor and its counsel, and the requesting party on or before *February 25* 2011.

11.   Binding Effect of Prior Orders. Pursuant to section 1141 of the Bankruptcy Code, all prior orders entered in the bankruptcy case and all documents and agreements executed by the Debtor during the pendency of the bankruptcy case that were authorized by the Bankruptcy Court or permitted under the Bankruptcy Code, and all motions or requests for relief pending before the Bankruptcy Court as of the Effective Date shall be, and hereby are, binding upon and shall inure to the benefit of the Debtor and its successors and assigns.

12.   Binding Effect of Plan. In accordance with section 1141(a) of the Bankruptcy Code, the Plan (including the exhibits and schedules to, and all documents and agreements created pursuant to the Plan) and all of its provisions shall be, and hereby are, binding upon the Debtor, any lessor or lessee of property to or from the Debtor, any creditor or equity security holder of the Debtor, including all governmental entities, whether or not the Claim or Equity

16

Interest of such creditor or equity security holder is impaired under the Plan and whether or not

such creditor, equity security holder or entity has accepted the Plan, and the respective heirs,

executors, administrators, successors or assigns, if any, of all of the foregoing.

13.    Filing and Recording.    This Confirmation Order and the Plan shall be binding

upon and shall govern the acts of all entities, including, without limitation, all filing agents,

filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars

of deeds, administrative agencies, governmental departments, secretaries of state, federal, state,

and local officials, and all other persons and entities, who may be required, by operation of law,

the duties of their office, or contract, to accept, file, register, or otherwise record or release any

documents or instruments.    Each and every federal, state and local governmental agency is

hereby directed to accept any and all documents and instruments necessary, useful, or

appropriate (including, without limitation, Uniform Commercial Code financing statements and

mortgages) to effectuate, implement and consummate the transactions contemplated by the Plan

and this Confirmation Order.

14.    Effect of Reference to the Plan in this Confirmation Order.    The failure to

reference or discuss any particular provision of the Plan in this Confirmation Order shall have

no effect on the validity, binding effect or enforceability of such provision, and each provision

of the Plan shall have the same validity, binding effect and enforceability as if fully set forth in

this Confirmation Order.    Each term and provision of the Plan is valid and enforceable pursuant

to its terms and is specifically approved pursuant to this Confirmation Order even if not

referenced herein.

15.    <u>Headings</u>. Headings utilized in this Confirmation Order are for convenience of reference only, and shall not constitute a part of the Plan or this Confirmation Order for any other purpose.

16.    <u>Notice of Entry of Confirmation Order</u>. Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), no later than seven (7) Business Days after the entry of this Confirmation Order, the Debtor shall cause a notice of the entry of this Confirmation Order to be served on all holders of Claims or Interests and any other persons on whom the notice of the Confirmation Hearing was served.  Such actual notice of entry of the Confirmation Order shall have the effect of an order of the Court and shall constitute good and sufficient notice of the entry of this Confirmation Order and of the relief granted herein pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), and no other or further notice of entry of this Confirmation Order need be given.

17.    <u>Notice of Effective Date</u>. Within seven (7) Business Days following the occurrence of the Effective Date, the Debtor shall file notice of the occurrence of the Effective Date and shall serve a copy of this notice on all creditors and Equity Interest holders, the United States Trustee, and other parties in interest, by causing such notice to be delivered to such parties by first-class mail, postage prepaid. No other or further notice of the Effective Date shall be necessary.

18.    <u>Nonoccurrence of Effective Date</u>. In the event that the Effective Date does not occur, then: (i) the Plan; (ii) assumption or rejection of executory contracts or unexpired leases pursuant to the Plan; (iii) any document or agreement executed pursuant to the Plan; (iv) any actions, releases, waivers, or injunctions authorized by this Confirmation Order or any order in aid of the consummation of the Plan; and (v) this Confirmation Order shall be deemed null and void *ab initio*. In such event, nothing contained in this Confirmation Order, any order in aid of

18

consummation of the Plan, or the Plan, and no acts taken in preparation for consummation of the Plan, (a) shall be deemed to constitute a waiver or release of any Claims or Equity Interests by or against the Debtor or any other persons or entities, to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor or otherwise, or to constitute an admission of any sort by the Debtor or any other Persons as to any issue, or (b) shall be construed as a finding of fact or conclusion of law in respect thereof.

19.    <u>Consummation Of Plan</u>. Bankruptcy Rule 3020(e) shall not apply to this Confirmation Order and the Court authorizes the Debtor to consummate the Plan immediately after entry of this Confirmation Order.

20.    <u>Payment of Statutory Fees</u>. All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date. All such fees that arise after the Effective Date shall be paid by the Debtor and the Class 5 Disbursing Agent in accordance with Section 5.14 of the Plan. The obligation to pay quarterly fees to the Office of the United States Trustee pursuant to section 1930 of title 28 of the United States Code shall continue until such time as the Debtor's case is closed.

21.    <u>Plan Classification Controlling</u>. The classification of Claims and Interests for purposes of distributions under the Plan shall be governed solely by the terms of the Plan. The classifications included in the Ballots tendered to or returned by the holders of Claims for purposes of voting on the Plan (a) were included in the Ballots solely for purposes of voting on the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes; (c) may not be relied upon by any holder of a Claim as representing the actual

classifications of such Claims under the Plan for distribution purposes; and (d) shall not be binding on the Debtor under any circumstances.

22.    Solicitation of the Plan and Exemption from Securities Laws. The Debtor and its professionals have solicited votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code in good faith, within the meaning of section 1125(e) of the Bankruptcy Code, and in compliance with the applicable provisions of the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws and regulations and, accordingly, such parties are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article XI of the Plan and shall not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the distributions made pursuant to the Plan. Specifically, pursuant to section 1125(e) of the Bankruptcy Code, none of the parties listed above that participated in (i) the transmittal of Solicitation Packages (including transmittal of the Plan and the Disclosure Statement), (ii) the transmittal of the non-voting materials, or (iii) the solicitation of votes to accept or reject the Plan shall be liable, on account of such actions or such participation, for any violation of any applicable law, rule or regulation governing the solicitation of votes to accept or reject the Plan.

23.    Executory Contracts and Unexpired Leases. As set forth in Article VIII of the Plan, any and all of the Debtor's leases or executory contracts that have not been (i) previously assumed by the Debtor or the subject of a pending motion to assume of the Bankruptcy Court pending on the Confirmation Date or (ii) previously rejected or the subject of a motion to reject pending on the Confirmation Date or (iii) designated in the Plan Supplement to the Plan, shall be deemed rejected by the Debtor effective as of the Confirmation Date but subject to the

occurrence of the Effective Date. All Proofs of Claim with respect to Claims arising from the rejection of executory contracts or unexpired leases shall, be filed with the Bankruptcy Court within thirty (30) days after the mailing of the notice of the Effective Date. All Proofs of Claim with respect to Claims arising from the rejection of executory contracts and unexpired leases shall be treated as Class 5 General Unsecured Claims, as applicable, for purposes of distribution pursuant to the Plan, unless and until the Person or Entity asserting such Claim obtains an order of the Bankruptcy Court upon notice to the Debtor, that allows the Claims in another Class under the Plan. Objections to a Proof of Claim filed pursuant to this Section shall be served and filed by the Disbursing Agent or the Debtor no later than sixty (60) days after the filing of such Proof of Claim, provided, however, this deadline may be extended by the Bankruptcy Court upon motion of the Reorganized Debtor or the Disbursing Agent, with or without notice or hearing.

24.    Distributions and Claims Reconciliation. The provisions of Article VII of the Plan regarding the distributions under the Plan and the reconciliation of Disputed Claims are hereby approved in all respects.

25.    Release. On the Effective Date, (i)  the Debtor, the Estate, and their respective successors or assigns, including, without limitation, the Class 5 Disbursing Agent, the Class 5 Trust, and any Person or entity claiming a right in a derivative capacity on their behalf and (ii) any holder of a Claim or Interest ((i), (ii) and any holder of a Claim classified under Class 5 General Unsecured Claims together being the "Releasors") hereby unconditionally and irrevocably release Blue Wolf and its shareholders, members, managers, general partners, limited partners, officers, directors, employees, agents, representatives, attorneys and advisors or consultants (collectively, the "Released Parties"), as set forth more fully below, from any and all

direct, indirect or derivative claims, obligations, suits, judgments, Liens, damages, rights, causes of action, liabilities, claims or rights of contribution and indemnification, and all other controversies of every type, kind, nature, description or character whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event or other occurrence taking place from the beginning of the world to the Effective Date, arising from or relating in any way, directly or indirectly, to the Debtor, its Property, assets, operations or liabilities, the DIP Loan Agreement, the Chapter 11 Case, the Plan, or the Disclosure Statement; provided, however, that the Releasors shall not be deemed to have released any rights to enforce the terms of the Plan or their rights to distributions thereunder.

26.   Discharge.  Except as otherwise provided for in this Plan, the Confirmation Order, or any other order of the Bankruptcy Court, in accordance with section 1141(d) of the Bankruptcy Code, entry of the Confirmation Order acts as a discharge effective as of the Effective Date of all debts, Claims against, Liens on, and Interests in the Debtor, its assets and Property, which debts, Claims, Liens and Interests arose at any time before the entry of the Confirmation Order.  The discharge of the Debtor shall be effective as to each Claim and Interest, regardless of whether a Proof of Claim or Interest was filed or whether the Claim or Interest was Allowed or whether the holder of the Claim or Interest votes to accept the Plan.  On the Effective Date, as to each and every discharged Claim and Interest, any holder of such Claim or Interest shall be precluded from asserting such Claim or Interest against the Debtor or the Reorganized Debtor or its assets or properties.

27.    Injunction.  On and after the Confirmation Date, except to enforce the terms and

conditions of the Plan before the Bankruptcy Court, or as permitted under the Exit Facility, all

Persons or Entities who have held, hold or may hold any Claim against or Interest in the Debtor

or the Committee are, with respect to any such Claim or Interest, permanently enjoined from and

after the Confirmation Date from:  (a)  commencing, conducting or continuing in any manner

directly or indirectly, any suit, action or other proceeding of any kind (including, without

limitation, any proceeding in a judicial, arbitral, administrative or other forum) against the

Reorganized Debtor, the Committee, Class 5 Disbursing Agent or the Class 5 Trust or any of its

properties, or any direct or indirect transferee of any property of, or direct or indirect successor

in interest to, any of the foregoing Persons or Entities and all of their respective direct and

indirect parents, subsidiaries and affiliates, together with each of their respective shareholders,

members, managers, general partners, limited partners officers, directors, employees, agents,

representatives, attorneys and advisors or consultants or any property of any of the foregoing

(collectively, the "Protected Parties");  (b)  enforcing, levying, attaching (including, without

limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or

means whether directly or indirectly, against any of the Protected Parties of any judgment,

award, decree or order; (c)  creating, perfecting or otherwise enforcing in any manner, directly

or indirectly, any encumbrance of any kind against any of the Protected Parties; (d)  asserting

any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any

obligation due to any of the Protected Parties; and (e)  taking any actions in any place and in any

manner whatsoever that do not conform to or comply with the provisions of the Plan.  Nothing

in this section shall preclude the Reorganized Debtor from asserting Avoidance Actions or

Estate Actions or continuing to pursue Avoidance Actions or Estate Actions.

28.    <u>Exculpation</u>.  Neither the Debtor, the Reorganized Debtor, the Committee, or Blue
Wolf, or any of their respective direct and indirect parents, subsidiaries and affiliates, together
with each of their respective present and former shareholders, members, managers, general
partners, limited partners, officers, directors, employees, agents, representatives, attorneys and
advisors or consultants or their successors or assigns, shall have or incur any liability to any
holder of a Claim or Equity Interest, nor to any other party in interest or their respective agents,
employees, representatives, financial advisors, attorneys or affiliates or any of their successors
or assigns, for any act, event or omission in connection with, relating to, or arising out of the
administration of this Chapter 11 bankruptcy proceeding, the pursuit of confirmation of the Plan,
the Disclosure Statement, the consummation of the Plan, or the administration of the Plan or the
property to be distributed under the Plan, provided that, (a)  the terms of Section 11.8 of the Plan
shall not apply to any liability of any entity for its breach of fiduciary duty, bad faith, willful
misconduct, or negligence, and (b)  nothing herein exculpates the Debtor, the Reorganized
Debtor or its agents from effectuating the Plan.

29.    <u>Governmental Approvals</u>.  Each federal, state, commonwealth, local, foreign or
other Governmental Unit is hereby directed and authorized to accept any and all documents,
mortgages, deeds of trust, security filings, financing statements and instruments necessary or
appropriate to effectuate, implement or consummate the transactions contemplated by the Plan
and this Confirmation Order.  This Confirmation Order shall constitute all approvals and
consents required, if any, by the laws, rules or regulations of any Governmental Unit with respect
to the implementation or consummation of the Plan and any other acts that may be necessary or
appropriate for the implementation or consummation of the Plan.

30.    <u>Term of Bankruptcy Injunction or Stays</u>.  All injunctions or stays in effect in the

Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in

existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

31.    <u>Dissolution of the Committee</u>.  Upon ten (10) days after the later of (i) the

Effective Date and (ii)  the Confirmation Order becoming a Final Order, the Committee will

dissolve and the members of the Committee shall be released and discharged from their duties.

32.    <u>Reversal or Vacatur</u>.  If any or all of the provisions of this Confirmation Order are

hereafter reversed, modified or vacated by subsequent order of this Court or any other court,

such reversal, modification or vacatur shall not affect the validity of the acts or obligations

incurred or undertaken under or in connection with the Plan prior to the Debtor's receipt of

written notice of any such order.  Notwithstanding any such reversal, modification, or vacatur of

this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in

reliance on, this Confirmation Order prior to the effective date of such reversal, modification or

vacatur shall be governed in all respects by the provisions of this Confirmation Order and the

Plan or any amendments or modifications thereto.

33.    <u>Authorization to Consummate the Plan</u>.  This Confirmation Order is a Final Order

and the period in which an appeal must be filed shall commence upon the entry hereof.   The

fourteen (14) day stay of this Confirmation Order under Bankruptcy Rule 3020(e) is hereby

waived.  The Debtor is authorized to consummate the Plan at any time after the entry of this

Confirmation Order, subject to the satisfaction or waiver of the conditions precedent to

occurrence of the Effective Date as set forth in Section 9.2 of the Plan.

Dated: December __, 2010

_____
HONORABLE JOAN N. FEENEY
UNITED STATES BANKRUPTCY JUDGE

584295

**EXHIBIT A TO**

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING
THE DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| In re | ) | |
| | ) | Chapter 11 |
| | ) | |
| GLOUCESTER ENGINEERING CO., INC., | ) | Case No. 10-12967-JNF |
| Debtor. | ) | |
| | ) | |

**DEBTOR'S FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

HANIFY & KING, Professional Corporation
Charles R. Bennett, Jr., Esquire
Andrew G. Lizotte, Esquire
Christopher M. Condon, Esquire
One Beacon Street
Boston, Massachusetts 02108
(617) 423-0400

Attorneys for the Debtor and Debtor-in-Possession

# INTRODUCTION

Gloucester Engineering Co., Inc., the above-captioned debtor and debtor-in-possession (the "Debtor") hereby proposes the following plan of reorganization pursuant to section 1121 of the Bankruptcy Code (the "Plan"). Reference is made to the Disclosure Statement for risk factors and a summary and analysis of the Plan and certain related matters. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code, and Bankruptcy Rule 3019 and Article XI of this Plan, the Debtor expressly reserves the right to alter, amend or modify this Plan, one or more times, before its substantial consummation.

# ARTICLE I

## DEFINITIONS

1.1    **General.** Unless the context otherwise requires, the following terms shall have the respective meanings specified below when used in initially capitalized form in the Plan. Any term that is not defined herein but that is defined in the Bankruptcy Code shall have the meaning assigned to such term in the Bankruptcy Code. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include the masculine. Unless otherwise specified herein, any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors, assigns and affiliates.

1.2    **Additional Critical Supplier Distribution** means the additional distribution to eligible Critical Suppliers of the Critical Supplier's Pro Rata share of the Critical Supplier Equity Pool, to be vested ratably over a period of one year.

1.3    **Administrative Claim Bar Date** has the meaning set forth in Section 7.1 of the Plan.

1.4    **Administrative Claim** means a Claim or portion of a Claim under sections 503(b) and 1114(e)(2) of the Bankruptcy Code or determined to be an Allowed Administrative Claim by a Final Order that is entitled to priority under sections 507(a)(2) or 507(b) of the Bankruptcy Code, including any Claims allowed under section 503(b)(9) of the Bankruptcy Code, for costs or expenses of administration of the Chapter 11 Case including, without limitation, any actual and necessary expenses of operating the businesses of the Debtor or preserving the estate incurred after the Order for Relief Date, and any and all fees and expenses of Professional Persons Filed under sections 330, 331 or 503 of the Bankruptcy Code.

1.5    **Allowed** means, except as otherwise provided in the Plan: (a) with respect to a Claim other than an Administrative Claim, any Claim for which a proof of claim was filed on or before the applicable Bar Date or that was listed in the Schedules and not listed therein as contingent, unliquidated or disputed, and either (i) was allowed by Final Order, or (ii) to which

no objection has been filed; and (b) with respect to an Administrative Claim, any such Claim (i) consisting of an undisputed obligation incurred in the ordinary course of business as to which payment has been made, (ii) consisting of an undisputed Claim for United States Trustee fees as to which payment has been made, (iii) consisting of a Fee Claim allowed by Order, or (iv) consisting of any other Administrative Claim, for which a proof of claim is filed not later than the Administrative Claim Bar Date and (A) is allowed by Final Order, or (B) to which no objection has been filed within thirty (30) days after the Administrative Claim Bar Date or such later date specified by Order on motion of the Debtor.  Except as otherwise provided herein, in accordance with section 502(d) of the Bankruptcy Code, a Claim held by any party that is subject to an Avoidance Action shall not be an Allowed Claim until such time as a Final Order is entered by the Bankruptcy Court on the Avoidance Action.

1.6    **Allowed Amount**, as to any Allowed Claim, means: (a) with respect to any Claim that becomes Allowed by reason of an Order, the amount specified in such Order; (b) with respect to any Administrative Claim of the type described in Section 1.4(b)(i) or (ii), the amount paid on account of such Claim; (c) with respect to any Administrative Claim that becomes Allowed other than by reason of Section 1.4(b)(i) or (ii) or an Order, the amount set forth in a proof of claim therefor filed on or before the Administrative Claim Bar Date; and (d) with respect to any Claim other than an Administrative Claim that becomes Allowed other than by reason of an Order, the amount set forth in a proof of claim therefor filed on or before the applicable Bar Date or, if no such proof of claim has been filed, the amount listed in the Schedules and not listed therein as contingent, unliquidated or disputed.

1.7    **Avoidance Actions** means any and all claims and causes of action of the Debtor, arising under the Bankruptcy Code, including, without limitation, sections 544, 545, 547, 548, 549 and 550 thereof, but not including any claim or cause of action against the Professional Persons or any claims or causes of action released under the terms of this Plan, any Order of the Bankruptcy Court or pursuant to other applicable law or agreement.

1.8    **Bankruptcy Code** means Title 11 of the United States Code, as in effect on the Petition Date, and as amended effective as of the Petition Date.

1.9    **Bankruptcy Court** means the United States Bankruptcy Court for the District of Massachusetts or such other court as may hereafter be granted jurisdiction over the Debtor's Chapter 11 Case.

1.10    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure effective August 1, 1996 in accordance with the provisions of 28 U.S.C. § 2075, and the local rules of the Bankruptcy Court, as in effect on the Petition Date, and is amended effective as of the Petition Date.

1.11    **Bar Date** means (a) as to Claims arising or deemed to arise prior to the Order for Relief Date, August 20, 2010 or, if applicable, the later date established by the Bar Order or Section 8.4, and (b) as to Claims arising or deemed to arise from and after the Order for Relief Date, except to the extent that no proof of claim therefor is required under Section 7.1, the Administrative Claims Bar Date.

2

1.12   **Bar Order** means the order establishing the deadline for filing of prepetition and Gap Period Claims.

1.13   **BGE** means Battenfeld Gloucester Engineering Co., Inc., a/k/a SMS.

1.14   **BGE Secured Loan Agreement** means that certain Security Agreement dated as of October 25, 2007 by and between BGE and the Debtor.

1.15   **BGE Secured Claim** means the Allowed Secured Claim arising under the BGE Secured Loan Agreement.

1.16   **BG LLC** means Battenfeld Gloucester, LLC, the predecessor to the Debtor.

1.17   **Blue Wolf DIP Loan** means the post-petition loan facility provided by Blue Wolf to the Debtor, as evidenced by the DIP Loan Agreement.

1.18   **Blue Wolf** means Blue Wolf Equipment Holdings, LLC.

1.19   **Business Day** means a day other than Saturday, Sunday or a legal holiday defined in Bankruptcy Rule 9006(a) as applicable in Massachusetts.

1.20   **Case Closing Notice** has the meaning set forth in Section 5.14 of the Plan.

1.21   **Cash** means cash and cash equivalents, including, but not limited to, wire transfers, checks and other readily marketable direct obligations of the United States of America and certificates of deposit issued by banks.

1.22   **CBA** or **Collective Bargaining Agreement** shall mean any collective bargaining agreement between any Debtor and any of its employees' representative labor organizations as defined by the National Labor Relations Act.

1.23   **Chapter 11 Case** means the above-captioned Chapter 11 case pending for the Debtor.

1.24   **Claim** means a claim, as defined in Code Section 101(5), against the Debtor that currently exists or arises before the Effective Date, including Secured Claims, Priority Claims, Gap Period Claims, and General Unsecured Claims.

1.25   **Class** means a category of holders of Claims or Interests, as classified pursuant to Article II of the Plan.

1.26   **Class 5 Disbursing Agent** means Craig R. Jalbert of Verdolino & Lowey, P.C. or any successor disbursing agent appointed in accordance with this Plan to administer the Class 5 Trust.

1.27   **Class 5 Pool** means the sum of Five Hundred Fourteen Thousand Dollars ($514,000) to be used to satisfy Allowed Class 5 General Unsecured Claims, except the Additional Critical Supplier Distribution.

3

1.28    **Class 5 Pool Escrow** means the escrow established by the Debtor and the Class 5 Disbursing Agent in the amount of the Class 5 Pool for purposes of making distributions to and satisfying the Allowed Claims of holders of Allowed Class 5 General Unsecured Claims, except the Additional Critical Supplier Distribution.

1.29    **Class 5 Reserve Balance** means the balance of the Class 5 Pool Escrow after payment of all Allowed Class 5 Claims (except the Additional Critical Supplier Distribution).

1.30    **Class 5 Trust** means the trust created pursuant to Section 5.4 of the Plan in form and substance acceptable to the Debtor, Blue Wolf, and the Committee.

1.31    **Committee** means the Official Committee of Unsecured Creditors appointed by the Office of the United States Trustee and as reconstituted from time to time and existing as of the Confirmation Date.

1.32    **Confirmation** means the entry of the Confirmation Order on the docket of the Bankruptcy Court.

1.33    **Confirmation Date** means the date of entry of an order of the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code.

1.34    **Confirmation Hearing** means the hearing scheduled by the Court to consider confirmation of the Plan.

1.35    **Confirmation Order** means the Order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.36    **Creditor** means any person or entity having a Claim against the Debtor, including without limitation a Claim that arose on or before the Petition Date or a Claim against the Debtor's estate of any kind in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.37    **Critical Supplier** means suppliers of materials designated by the Debtor that enter into postpetition written supply agreements in the form substantially similar to the agreement set forth in the Plan Supplement and containing normal market terms acceptable to the Debtor and Blue Wolf.

1.38    **Critical Supplier Equity Pool** means the aggregate amount of five-percent (5%) of the fully diluted common stock of the Reorganized Debtor (the form of the shareholder agreement with respect to the Reorganized Debtor and any related agreement reflecting the rights of minority equity holders to be in form and substance acceptable to the Committee) to be distributed to the Critical Suppliers in accordance with this Plan. Any amount of the CriticalSupplier Equity Pool either (a) not distributed to a Critical Supplier or (b) which such Critical Supplier relinquishes pursuant to the terms of the Plan shall vest in Blue Wolf.

1.39    **Cure Claims** means Claims based upon a Debtor's default under an executory contract or unexpired lease at the time such contract or lease is assumed by that Debtor under section 365 of the Bankruptcy Code.

4

1.40    **Cure Claims Bar Date** has the meaning set forth in Section 8.2 of the Plan.

1.41    **Debtor** means Gloucester Engineering Co., Inc.

1.42    **Debtor-in-Possession** means the Debtor in the capacity, and with the status and rights, conferred by sections 1107 and 1108 of the Bankruptcy Code.

1.43    **Deficiency Claim** means, with respect to a pre-petition Claim that is partially secured, the amount by which the Allowed amount of such Claim exceeds the value of the property owned or held by the Debtor that collateralizes the Claim, as and to the extent such may be determined by the Bankruptcy Court.

1.44    **DIP Claim** means the Allowed Secured Claim of Blue Wolf arising under the DIP Loan.  For purposes of the Plan, the DIP Claim shall be deemed an Allowed Secured Claim, not subject to objection, set-off, counterclaim or any other claim of avoidance of any nature.

1.45    **DIP Lender** means Blue Wolf.

1.46    **DIP Loan Agreement** means the Debtor in Possession Loan and Security Agreement entered into by and between Blue Wolf and the Debtor dated June 30, 2010, as amended or modified in accordance with its terms.

1.47    **Disallowed** means, as to a particular Claim, (a) any Claim disallowed in whole by Final Order, (b) any other Claim other than an Administrative Claim, unless (i) a proof of claim therefore was filed on or before the applicable Bar Date or (ii) the Claim was listed in the Schedules and not listed therein as contingent, unliquidated or disputed, (c) any Administrative Claim (other than a Claim that is Allowed pursuant to Section 1.4(b)(i) or (ii)) for which a proof of claim is not filed on or before the Administrative Claim Bar Date, and (d) any Claim treated as disallowed pursuant to Sections 7.11 and 7.12.

1.48    **Disclosure Statement** means the disclosure statement respecting the Plan, as approved by the Bankruptcy Court as containing adequate information in accordance with section 1125 of the Bankruptcy Code, all exhibits and annexes thereto and any amendments or modifications thereof.

1.49    **Disputed Claim** or **Disputed [    ] Claim** means any Claim, including any Administrative Claim, which has not become an Allowed Claim pursuant to the Plan or a Final Order.

1.50    **Disputed Claims Reserves** has the meaning set forth in Section 7.5 of the Plan.

1.51    **Dory Road Property** means the real property leased by the Debtor at 11 Dory Road, Gloucester, Massachusetts.

1.52    **Effective Date** means the business day after all conditions precedent set forth in Section 9.2 of the Plan have been met.

1.53    **Entity** has the meaning set forth in section 101(15) of the Bankruptcy Code.

5

1.54    **Equity Interests** means those parties holding stock interests in the Debtor prior to the Effective Date.

1.55    **Estate** means the estate of the Debtor.

1.56    **Estate Actions** means all causes of action which belong to the Debtor's Estate, except Avoidance Actions, against third parties who are not Released Parties, and excluding any claims or causes of actions released under the terms of this Plan, any Order of the Bankruptcy Court or pursuant to other applicable law or agreement.

1.57    **Exit Facility** has the meaning set forth in Section 5.1 of the Plan.

1.58    **Fee Claim Bar Date** has the meaning set forth in section 7.2 of the Plan.

1.59    **Fee Claim** means a claim under sections 328, 330(a), 503 or 1103 of the Bankruptcy Code for the compensation and the reasonable out-of-pocket expenses of a Professional Person with respect to services rendered and reimbursement of the reasonable out-of-pocket expenses of the Committee members incurred in the Chapter 11 Case on or prior to the Effective Date which has been approved by a Final Order (including expenses of the members of the Committee).

1.60    **File, Filed**, or **Filing** means file, filed or filing with the United States Bankruptcy Court for the District of Massachusetts.

1.61    **Final DIP Order** means the Final DIP Order Pursuant to Sections 105(a), 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002 and 4001 Granting Motion for Entry of an Order (I) Authorizing Debtor-in-Possession to (A) Obtain Post-Petition Financing, (B) Grant Liens and Superpriority Administrative Claim Status, and (C) Modify the Automatic Stay; and (II) Granting Use of Cash Collateral and Related Relief entered by the Bankruptcy Court in the Chapter 11 Case on August 10, 2010.

1.62    **Final Order** means an Order as to which (a) the time has expired within which a proceeding for judicial review (whether by way of rehearing, appeal, *certiorari* or otherwise, but not pursuant to Code Section 1144 or Fed. R. Bankr. P. 9024) may be commenced, without any such proceeding having been commenced, or (b) if such a proceeding has been timely commenced, such Order has been affirmed by the highest tribunal in which review is sought or such proceeding for review has otherwise been terminated without modification of such Order, and the time has expired within which any further proceeding for judicial review may be commenced.

1.63    **Gap Period Claims** means any unsecured claims arising on or after the Petition Date and prior to the Order for Relief Date.

1.64    **GEE** means Gloucester Engineering Europe, GmbH.

1.65    **General Unsecured Claim** means any unsecured Claim not entitled to priority pursuant to Section 507 of the Bankruptcy Code, including without limitation, any unsecured Claim arising from the rejection or termination of an executory contract or unexpired lease, that

6

is not a Priority Claim. The amount of such General Unsecured Claim shall be limited to the amount due and owing as of the Petition Date, subject to any limitations set forth in section 502 of the Bankruptcy Code, and shall not include any interest accruing from and after the Petition Date.

1.66    **Impaired** has the meaning ascribed to such term in section 1124 of the Bankruptcy Code.

1.67    **Interest** means, with respect to the Debtor, any equity security or any other security or agreement granting rights to convert to, purchase, hold or own any equity security in the Debtor as defined in section 101(16) of the Bankruptcy Code.

1.68    **Liens** means valid and enforceable liens, mortgages, security interests, pledges, charges, encumbrances, or other legally cognizable security devices of any kind.

1.69    **Order** means an order or judgment of the Court.

1.70    **Order for Relief Date** means June 25, 2010.

1.71    **Other Priority Claim** means any Claim against the Debtor other than an Administrative Claim, Fee Claim or Priority Tax Claim entitled to priority in payment under section 507(a) of the Bankruptcy Code.

1.72    **Person** shall have the meaning ascribed to such term in section 101(41) of the Bankruptcy Code.

1.73    **Petition Date** means March 23, 2010.

1.74    **Plan** means this plan, as it may be amended or modified from time to time as permitted herein.

1.75    **Plan Supplement** means the supplemental appendix filed with the Bankruptcy Court prior to the hearing on the Disclosure Statement that will contain, inter alia, the form of critical supplier agreement, the Class 5 Trust agreement, shareholder agreement, and all other documents reflecting the rights of minority equity holders in form and substance acceptable to the Debtor, Blue Wolf, and the Committee.

1.76    **Pre-Petition Blue Wolf Secured Claim** means the Allowed Secured Claim of Blue Wolf arising under the Pre-Petition Blue Wolf Secured Loan Agreement. For purposes of the Plan, the Pre-Petition Blue Wolf Secured Claim shall be deemed an Allowed Secured Claim, not subject to objection, set-off, counterclaim or any other claim of avoidance of any nature.

1.77    **Pre-Petition Blue Wolf Secured Loan Agreement** means collectively, that certain Loan and Security Agreement dated as of October 29, 2007, as amended, by and between the Debtor and Blue Wolf (as successor to Silicon Valley Bank), and that certain Loan and Security Agreement dated as of December 7, 2007, as amended, by and between the Debtor and Blue Wolf (as successor to Silicon Valley Bank).

7

1.78    **Pre-Petition Blue Wolf Secured Loan** means the pre-petition loan facility evidenced by the Pre-Petition Blue Wolf Secured Loan Agreement.

1.79    **Priority Claim** means any Administrative Claim, and any Claim arising before the Petition Date entitled to priority under sections 507(a)(2), or 507(a)(4) through (10) of the Bankruptcy Code.

1.80    **Priority Tax Claim** means any Claim for taxes against the Debtors entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

1.81    **Professional Person** means those Persons (i) employed pursuant to an order of the Bankruptcy Court in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered to the Debtor prior to the Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (ii) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

1.82    **Property** means all property of the Debtor's Estate of any nature whatsoever, real or personal, tangible or intangible, previously or now owned by the Debtor, or acquired by the Debtor's Estate, as defined in section 541 of the Bankruptcy Code.

1.83    ***Pro Rata*** means, in reference to any particular Claim within a class that is to receive a distribution from a particular fund, the amount of such fund multiplied by a fraction the numerator of which equals the Allowed Amount of the particular Claim and the denominator of which equals (a) at such time as any Claims of the class remain Unresolved, the aggregate Allowed Amount of all Claims of the class that have been Allowed plus the aggregate amount asserted by holders of Unresolved Claims as the allowable amount thereof; and (b) at such time as no Claims of the class remain Unresolved, the aggregate Allowed Amount of all Claims of the class.

1.84    **Protected Parties** has the meaning set forth in Section 11.4 of the Plan.

1.85    **Quarterly Fees** has the meaning set forth in Section 5.14 of the Plan.

1.86    **Released Parties** has the meaning set forth in Section 6.2 of the Plan.

1.87    **Releasors** has the meaning set forth in Section 6.2 of the Plan.

1.88    **Reorganized Debtor** means the Debtor from and after the Effective Date.

1.89    **Schedules** mean the Debtor's Schedules of Assets and Liabilities Filed pursuant to Bankruptcy Rule 1007 as they may be amended from time to time.

1.90    **Secured Claim** means a Claim secured by a lien or right of setoff, but only to the extent (a) entitled to secured status under Code Section 506(a) and (b) such lien or right of setoff is not avoidable under the Bankruptcy Code or applicable non-bankruptcy law.

1.91    **U.S. Trustee Fees** mean fees payable by the Debtor under 28 U.S.C. § 1930.

1.92    **Unresolved**, as to any Claim at any particular time on or after the Effective Date, means a Claim that has not been either Allowed or Disallowed, including the Debtor's estimate of additional Administrative Claims that will be asserted.

## ARTICLE II

### METHOD OF CLASSIFICATION OF CLAIMS AND INTERESTS AND GENERAL PROVISIONS AND CLASSIFICATION OF CLAIMS AND INTERESTS

2.1    **General Rules of Classification.**  As required by the Bankruptcy Code, the Plan classifies Claims and Interests in various Classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each Class of Claims or Interests is impaired or unimpaired. The Plan provides the treatment each Class will receive under the Plan. In accordance with the requirements of the Bankruptcy Code, Allowed Administrative Claims, Allowed Fee Claims and Allowed Priority Tax Claims are not set forth in Classes.

2.2    **Classification of Claims and Interests.**  The following is the designation of the Classes of Claims and Interests under the Plan:

(a)    Class 1 shall consist of all Allowed Other Priority Claims.

(b)    Class 2 shall consist of the Allowed DIP Claim.

(c)    Class 3 shall consist of the Allowed Pre-Petition Blue Wolf Secured Claim.

(d)    Class 4 shall consist of the Allowed Secured Claim of BGE.

(e)    Class 5 shall consist of all Allowed General Unsecured Claims.

(f)    Class 6 shall consist of all Equity Interests in the Debtor.

## ARTICLE III

### TREATMENT OF CLAIMS AND INTERESTS NOT IMPAIRED UNDER THE PLAN

**3.1    Administrative Claims.**  Except to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall be paid in respect of such Allowed Claim (a) the full amount thereof in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim, or upon such other terms as may be agreed upon by the holder of such Allowed Claim, or (b) such lesser amount as the holder of such Allowed Administrative Claim and the Debtor, prior to the Effective Date, and the holder of such Allowed Administrative Claim and the Reorganized Debtor following the Effective Date, might otherwise agree.

9

**3.2   Fee Claims.** Each holder of an Allowed Fee Claim shall receive one hundred percent (100%) of the unpaid amount of such Allowed Fee Claim in Cash on the Effective Date or as soon as practicable after such Fee Claim becomes an Allowed Fee Claim.

**3.3   Priority Tax Claims.** Except as provided herein, each holder of an Allowed Priority Tax Claim shall be paid in respect of such Allowed Claim either (a) the full amount thereof, without post-petition interest or penalty, in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim or upon such other terms as may be agreed upon by the holder of such Allowed Claim and the Debtor prior to the Effective Date, and the holder of such Allowed Claim and the Reorganized Debtor following the Effective Date, might otherwise agree, or (at the election of the Debtor or the Reorganized Debtor) (b) over a period of five (5) years from the Petition Date in equal monthly installments of principal plus interest at the rate determined under applicable nonbankruptcy law.

**3.4   Gap Period Claims.** Each Claim entitled to priority under Code Section 507(a)(3) shall be paid in Cash on the Effective Date, unless otherwise agreed by the Debtor and the claimant.

**3.5   Class 1 Other Priority Claims.** Each holder of an Allowed Other Priority Claim shall be paid in respect of such Allowed Claim (a) the full amount thereof in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim or upon such other terms as may be agreed upon by the holder of such Allowed Claim, or (b) such lesser amount as the holder of such Allowed Other Priority Claim and the Debtor, prior to the Effective Date, and the Reorganized Debtor, following the Effective Date, and the holder of such Allowed Other Priority Claim might otherwise agree. Any Allowed Claims in this Class 1 for employee paid time off shall be satisfied in the ordinary course of business consistent with the Debtor's employment policies and practices and shall not be included in the above cap. The holders of Claims in Class 1 are not Impaired and, therefore, not entitled to vote.

**3.6   Class 2 DIP Claim.** On the Effective Date, the DIP Claim shall be repaid in full from the proceeds of the Term Loan Exit Facility, provided, however, that if for any reason Blue Wolf or its designee does not provide the Exit Facility under a plan of reorganization confirmed by the Court, the DIP Claim shall be repaid in full. The holder of Claims in this Class are not Impaired and, therefore, not entitled to vote

## ARTICLE IV

## TREATMENT OF CLAIMS AND INTERESTS IMPAIRED UNDER THE PLAN

**4.1   Class 3 Pre-Petition Blue Wolf Secured Claim.**

    (a)   *Impairment and Voting.* Class 3 is impaired and, therefore, entitled to vote. Blue Wolf has agreed to accept the treatment accorded it under the Plan.

(b)    *Plan Treatment.* On the Effective Date, in full settlement and satisfaction of its Allowed Pre-Petition Blue Wolf Secured Claim, Blue Wolf shall convert its Allowed Class 3 Claim (along with the Allowed BGE Secured Claim) into a one hundred percent (100%) (less the Critical Supplier Equity Pool) equity interest in the Reorganized Debtor. Blue Wolf shall execute any documents necessary to discharge any liens securing the Allowed Class 3 Claim.

**4.2    Class 4 Allowed BGE Secured Claim.**

(a)    *Impairment and Voting.* Class 4 is impaired and therefore, entitled to vote.

(b)    *Plan Treatment.* On the Effective Date, in full settlement and satisfaction of the Allowed BGE Secured Claim, Blue Wolf, as assignee of BGE, shall convert its Allowed Class 4 Claim (along with the Allowed Pre-Petition Blue Wolf Secured Claim) into a one hundred percent (100%) (less the Critical Supplier Equity Pool) equity interest in the Reorganized Debtor. Blue Wolf shall execute any documents necessary to discharge any liens securing the Allowed Class 4 Claim. Blue Wolf shall waive any Deficiency Claim associated with the BGE Claim, which Deficiency Claim shall not participate in any distribution to Class 5 claimants.

**4.3    Class 5 General Unsecured Claims.**

(a)    *Impairment and Voting.* Class 5 is impaired and is entitled to vote under the Plan.

(b)    *Plan Treatment.* Unless otherwise agreed to by the holder of an Allowed General Unsecured Claim, the Reorganized Debtor, Blue Wolf and the Class 5 Disbursing Agent, in full settlement and satisfaction of the Class 5 Allowed General Unsecured Claim, each holder of a Class 5 Allowed General Unsecured Claim shall receive its Pro Rata share of the sum of the Class 5 Pool as follows: (i) on the Effective Date or as soon as practicable thereafter, each such holder shall receive its Pro Rata share of the Class 5 Pool on account of the amount of such Allowed Claim from the Class 5 Pool Escrow; and (ii) from time to time each such holder shall receive its Pro Rata share of the Class 5 Reserve Balance. On the Effective Date, except for the Additional Critical Supplier Distribution, (i) holders of Allowed Class 5 Claims shall become beneficiaries of the Class 5 Trust; (ii) all Class 5 Claims shall be transferred to and assumed by the Class 5 Trust; and (iii) the Debtor and its Property, and the Reorganized Debtor and its property shall be free and clear of all Class 5 Claims and be deemed released and discharged from all Class 5 Claims. All Deficiency Claims except the BGE Deficiency Claim shall be treated as Class 5 General Unsecured Claims. In addition, all Critical Suppliers that vote to accept the Plan shall also receive the Additional Critical Supplier

11

Distribution. Receipt of the Additional Critical Supplier Distribution shall be predicated on the Critical Supplier complying with the terms of its supply agreement with the Reorganized Debtor.

**4.4    Class 6 Equity Interests.**

(a)    *Impairment and Voting.* Class 6 is impaired but deemed to have rejected the Plan and, therefore, not entitled to vote under the Plan.

(b)    *Plan Treatment.* This Class shall consist of the Equity Interests of the Debtor. Class 6 Equity Interests shall receive nothing under the Plan. On the Effective Date, all Class 6 Interests shall be deemed cancelled, relinquished, null and void and of no force and effect.

## ARTICLE V

## MEANS FOR IMPLEMENTATION

**5.1    Exit Facility.** Upon the Effective Date, and subject to Section 3.6 of the Plan, Blue Wolf shall provide two new loans to the Debtor (the "Exit Facility") in accordance with the term sheet annexed as Exhibit A to the Plan. The principal amount of the Term Loan Exit Facility outstanding on the Effective Date will be equal to the amount of the DIP Claim at the Effective Date, and the Term Loan Exit Facility shall be used to satisfy the Class 2 DIP Claim. The Revolving Loan Exit Facility will be in the amount of Seven Million Five Hundred Thousand Dollars ($7,500,000.00) and will be undrawn upon the Effective Date. The Revolving Loan Exit Facility shall be secured by a first priority Lien on all assets of the Debtor, and the Term Loan Exit Facility shall be secured by a second priority Lien on all assets of the Debtor. The Liens and property interests of Blue Wolf shall remain perfected from and after the date of the Confirmation Order without the need of Blue Wolf to take any or further action or file or record any notes with respect thereto. The Confirmation Order shall be sufficient and conclusive notice and evidence of the grant, validity, perfection, and priority of Blue Wolf's Liens without the necessity of filing or recording the Confirmation Order (other than as docketed in the Chapter 11 Case) or any financing statement, mortgage or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect Blue Wolf's Liens, or to entitle Blue Wolf to the same priorities granted to Blue Wolf under the DIP Loan Agreement or herein (including, in respect of cash or deposits or investment property, any requirement that Blue Wolf has possession of or dominion and control over, any such cash in order to perfect an interest therein); provided that the Debtor or Reorganized Debtor shall execute and deliver to Blue Wolf and Blue Wolf may file or record financing statements or other instruments further to evidence or further to perfect Blue Wolf's Liens authorized, granted and perfected under the Exit Facility and hereby; and provided further that no such filing or recordation shall be necessary or required in order to create or perfect any such Lien.

**5.2    Corporate Action.** On the Effective Date, and automatically and without any further action, the Reorganized Debtor and the Class 5 Disbursing Agent shall be authorized and

empowered to take all such actions and measures necessary to implement and administer the terms and conditions of the Plan.

**5.3    Effective Date.** All parties required to execute documents or take other actions on, or in order to permit occurrence of, the Effective Date shall cooperate with the Debtor in good faith, on the Effective Date and during the period prior thereto, in connection with such documents and other actions.

**5.4    Class 5 Trust.** On the Effective Date, the Reorganized Debtor shall create a trust; provide for holders of Allowed Class 5 Claims to become beneficiaries of the Class 5 Trust; and appoint the Class 5 Disbursing Agent as trustee of the Class 5 Trust. All expenses of the Class 5 Disbursing Agent shall be paid solely from the Class 5 Pool Escrow.

**5.5    Class 5 Disbursing Agent.** On or before the Confirmation Date, the Committee, with the consent of the Debtor and Blue Wolf, which consent shall not be unreasonably withheld, shall appoint the Class 5 Disbursing Agent. The Class 5 Disbursing Agent shall administer the Class 5 Trust subject to the foregoing duties and powers, which shall include the following:

(a)    To commence, prosecute, compromise and /or settle objections to General Unsecured Claims;

(b)    To make decisions regarding the retention or engagement of professionals relating to the above and to pay, without court order, all reasonable fees and expenses of such professionals incurred after the Effective Date from the Class 5 Pool Escrow;

(c)    To make or direct distribution to holders of allowed Class 5 Claims and to otherwise implement and administer the Class 5 Reserve and the Plan with respect to General Unsecured Claims, except the Additional Critical Supplier Distribution;

(d)    To set off amounts owed to the Debtor prior to the Petition Date against any and all amounts otherwise due to be distributed to the holder of an Allowed Class 5 Claim under the Plan; and

(e)    To take all other actions not inconsistent with the provisions of the Plan deemed necessary or desirable in connection with its rights and duties.

The Class 5 Disbursing Agent's fees and expenses (and the fees and expenses of any professionals retained by the Class 5 Disbursing Agent) shall be paid from the Class 5 Pool. The fees and expenses of the Disbursing Agent and any retained professionals shall be payable on a monthly basis.

**5.6    Revesting of Property.** On the Effective Date, except as otherwise expressly provided in the Plan, without any further action, all assets of the Debtor and its bankruptcy estate

13

shall vest in the Reorganized Debtor, on an unrestricted basis except as otherwise provided in the Plan, and free and clear of liens, claims, encumbrances and other interests (except for those expressly preserved under the Plan). All Orders that restrict any such property or provide rights to any entity other than the Debtor in respect of any such property shall become inoperative on the Effective Date. As of the Effective Date, the Reorganized Debtor may operate its businesses and use, acquire and dispose of property and settle and compromise claims or interests without the supervision of the Bankruptcy Court or the Class 5 Disbursing Agent, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

Except as provided in, and unless expressly waived, released, compromised or settled in the Plan, the Confirmation Order, any non-appealable Order, or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, and in accordance with Section 1123(a)(5)(A) of the Bankruptcy Code, any Claims, demands, rights and causes of action, including Avoidance Actions that the Debtor or the Estate may hold against any person or entity, are fully preserved. No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to them by virtue of or in connection with the confirmation, consummation of effectiveness of the Plan.

   **5.7    Plan Funding.** Except as expressly set forth in the Plan, working capital of the Debtor and the Reorganized Debtor together with the proceeds of the Exit Facility shall be used for general working capital and capital expenditures of the Reorganized Debtor, and to pay the Allowed Administrative Claims, Allowed Fee Claims, Allowed Priority Claims, Allowed Other Priority Claims, Allowed Cure Claims, the distributions to Allowed General Unsecured Claims and the Allowed Administrative Convenience Claims and fund the Class 5 Pool Escrow pursuant to the terms of this Plan. In consideration for meeting its funding commitments under the Plan and otherwise in the aggregate amount necessary to effectuate the terms of this Plan (which will be paid in cash and/or in part by way of a conversion of the DIP Claim and the funding of the Exit Facility and conversion of the Pre-Petition Blue Wolf Secured Claim), subject to the Additional Critical Supplier Distribution, one hundred percent (100%) of the stock Interest in the Reorganized Debtor that are authorized and issued as of the Effective Date shall fully vest in Blue Wolf on the Effective Date. The Reorganized Debtor shall be responsible for disbursing the Additional Critical Supplier Distribution.

   **5.8    Debtor's interest in GEE.** Upon the Effective Date, the Reorganized Debtor shall continue to own its one hundred percent (100%) Equity Interest in GEE.

   **5.9    Reorganized Debtor.** From the Effective Date forward, the Reorganized Debtor shall administer the Plan, subject to the duties and powers reserved for the Class 5 Disbursing Agent. The duties and powers of the Reorganized Debtor with respect to the Plan shall include the following:

   (a)    To commence, prosecute, compromise and/or settle objections to Claims other than General Unsecured Claims;

   (b)    To commence, prosecute, compromise and/or settle Avoidance Actions and Estate Actions;

14

(c)     To make or direct that distributions be made pursuant to the Plan, provided, however, that upon funding the Class 5 Pool Escrow, the Reorganized Debtor shall have no further duties to fund or make distribution in connection with Class 5 Claims, except the Additional Critical Supplier Distribution;

(d)     To make decisions regarding the retention or engagement of professionals relating to the above and to pay, without court order, all reasonable fees and expenses of such professionals incurred after the Effective Date;

(e)     To set off amounts owed to the Debtor that were incurred on or after the Petition Date against any and all amounts otherwise due to be distributed to the holder of an Allowed Claim under the Plan;

(f)     To cooperate with the Class 5 Disbursing Agent and provide any information reasonably requested by the Class 5 Disbursing Agent in connection with its duties; and

(g)     To take all other actions not inconsistent with the provisions of the Plan that it deems necessary or desirable.

**5.10   Disputes.**  The Court shall have exclusive jurisdiction over any dispute arising from any act or omission of the Debtor, or any of its members or professionals.  Whether or not a dispute has arisen, the Reorganized Debtor shall have the right at any time to seek instructions from the Court concerning any question arising in connection with the performance of the Reorganized Debtor's duties hereunder.

**5.11   Execution of Documents.**   Confirmation of this Plan shall constitute authorization by the Bankruptcy Court in all respects for the Reorganized Debtor to enter into all documents, instruments and agreements reasonably necessary to effectuate the terms of this Plan. The form and/or content of the documents, instruments and agreements reasonably necessary to effectuate the terms of this Plan shall be subject to the approval of the Reorganized Debtor, in its sole discretion.

**5.12   Organization Documents and Good Standing.**   As of the Effective Date, the Debtor's organizational documents shall be amended as necessary to effectuate the terms of this Plan and shall become the organizational documents of the Reorganized Debtor.  To the extent that there is any inconsistency between this Plan and any of the organizational documents, the terms of this Plan shall control.

**5.13   Closing of Chapter 11 Case.**  At such time as all Unresolved Claims have been Allowed or Disallowed and the initial payments required by the Plan have been completed, the Reorganized Debtor shall promptly prepare and file with the Court all documents, and shall take all other steps, necessary to close the case.  Upon closing of the case, the Reorganized Debtor shall be free to deal with any remaining assets, including destruction or other disposition of records, as the Reorganized Debtor may in its sole discretion determine.

15

**5.14    United States Trustee Fees.** All fees payable pursuant to section 1930 of title 28 of the United States Code (the "Quarterly Fees") (i) which accrued on or prior to the Confirmation Date shall be paid by the Debtor on the Effective Date and (ii) which accrued after the Confirmation date shall be paid as follows:

    (a)    For the period from the Effective Date through and including the date the Reorganized Debtor provides written notice to the Class 5 Disbursing Agent that the Reorganized Debtor seeks to close the Chapter 11 Case because the Reorganized Debtor has performed all of its duties necessary to substantially consummate the Plan (the "Case Closing Notice"), the Reorganized Debtor shall pay the Quarterly Fees for such period; and

    (b)    In the event the Class 5 Disbursing Agent requires the Chapter 11 Case to remain open after receipt of the Case Closing Notice, the Quarterly Fees shall be paid solely by the Class 5 Disbursing Agent from the Class 5 Trust until such time as the Chapter 11 Case is closed.

From the period from the Effective Date through and including the date the Reorganized Debtor provides the Case Closing Notice, the Reorganized Debtor shall serve the United States Trustee with a quarterly disbursement report for each quarter (or portion thereof) through the earlier of the date the Chapter 11 Case is closed or the Reorganized Debtor provided the Case Closing Notice. Subsequent to the Reorganized Debtor providing the Case Closing Notice, the Class 5 Disbursing Agent shall serve the United States Trustee with a quarterly disbursement report for each quarter (or portion thereof) that the case remains open. The quarterly report shall be due fifteen days after the end of the calendar quarter. The quarterly financial report shall include the following:

    (a)    a statement of all disbursements made during the course of the quarter, by month, whether or not pursuant to the Plan;

    (b)    a summary, by class, of amounts distributed or property transferred to each recipient under the Plan, and an explanation of the failure to make any distributions or transfers of property under the Plan, if any;

    (c)    a description of any other factors which may materially affect the Reorganized Debtor's ability to complete its obligations under the Plan; and

    (d)    an estimated date when an application for final decree will be filed with the Bankruptcy Court (in the case of the final quarterly report, the date the decree was filed).

**5.15    Permitted Investments.** Cash held by the Class 5 Disbursing Agent, in any accounts or otherwise, shall be maintained in interest-bearing accounts at institutions on the United States Trustee's list of such approved institutions, or invested in United States government backed securities or mutual funds investing in such securities.

## ARTICLE VI

## RELEASES

**6.1    Application for Approval of Settlement.** Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan constitutes an application for approval of a compromise and settlement of any and all claims, suits and causes of action of the Debtor, the Estate, or their respective successors or assigns, including, without limitation, any Person or Entity claiming a right in a derivative capacity on their behalf in accordance with the terms of the Plan.

**6.2    General Release.** On the Effective Date, (i) the Debtor, the Estate, and their respective successors or assigns, including, without limitation, the Class 5 Disbursing Agent, the Class 5 Trust, and any Person or Entity claiming a right in a derivative capacity on their behalf and (ii) any holder of a Claim or Interest ((i), (ii) and any holder of a Claim classified under Class 5 General Unsecured Claims together being the "Releasors") hereby unconditionally and irrevocably release Blue Wolf and its shareholders, members, managers, general partners, limited partners, officers, directors, employees, agents, representatives, attorneys and advisors or consultants (collectively, the "Released Parties"), as set forth more fully below, from any and all direct, indirect or derivative claims, obligations, suits, judgments, Liens, damages, rights, causes of action, liabilities, claims or rights of contribution and indemnification, and all other controversies of every type, kind, nature, description or character whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event or other occurrence taking place from the beginning of the world to the Effective Date, arising from or relating in any way, directly or indirectly, to the Debtor, its Property, assets, operations or liabilities, the DIP Loan Agreement, the Chapter 11 Case, the Plan, or the Disclosure Statement; provided however, that the Releasors shall not be deemed to have released any rights to enforce the terms of the Plan or their rights to distributions thereunder.

**6.3    Release Consideration.** The consideration Blue Wolf shall provide, or has provided, in exchange for the releases described in the Plan and the receipt of the Reorganized Debtor's Equity Interests, include the Exit Facility and conversion of its Allowed Class 3 Secured Claim and Allowed Class 4 BGE Secured Claim into equity. Notwithstanding any disallowance of any portion of the Class 3 Secured Claim or Class 4 BGE Secured Claim, Blue Wolf shall receive one hundred percent (100%) of the equity in the Reorganized Debtor, subject only to the actual amount of equity distributed to Critical Suppliers pursuant to this Plan.

**6.4    No Admissions.** The releases and injunctions granted in favor of the Released Parties are integral parts of the Plan and are necessary to confirm the Plan.

17

## ARTICLE VII

## CLAIMS AND DISTRIBUTIONS UNDER THE PLAN

**7.1    Bar Date for Administrative Claims.** Except for U.S. Trustee Fees and Professional Fee Claims, requests for payment of Administrative Claims (other that Claims under 503(b)(9) of the Bankruptcy Code governed by applicable local rules) must be filed and served on the Reorganized Debtor (to the attention of Andrew G. Lizotte, Esquire, Hanify & King, P.C., One Beacon Street, Boston, MA 02108 – counsel to the Debtor), no later than twenty (20) days after the Effective Date (the "Administrative Claims Bar Date"). Any Person or Entity that is required to file and serve a request for payment of an Administrative Claim and fails to timely file and serve such request on or before the Administrative Claim Bar Date and contemporaneously served on the Debtor shall be (a) Disallowed without need for entry of an Order, and (b) forever barred, estopped and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof and no objection to such late or unfiled claim shall be necessary. Objections to requests for payment of Administrative Claims (except for Fee Claims) must be filed and served on the Reorganized Debtor and its respective counsel, and the party requesting payment of an Administrative Claim within thirty (30) days after the Administrative Claim Bar Date or as otherwise fixed by the Bankruptcy Court.

**7.2    Bar Date for Fee Claims.** Unless otherwise ordered by the Bankruptcy Court, requests for payment of Fee Claims incurred through the Effective Date, must be filed and served on the Reorganized Debtor and its counsel no later than thirty (30) days after the Effective Date (the "Fee Claim Bar Date"). Any Professional Person that is required to file and serve a request for payment of a Fee Claim and fails to timely file and serve such request, shall be forever barred, estopped and enjoined from asserting such Fee Claim or participating in distributions under the Plan on account thereof. Objections to Fee Claims must be filed and served on the Reorganized Debtor and its counsel, and the requesting party by twenty (20) days after the Fee Claim Bar Date or as otherwise fixed by the Bankruptcy Court.

**7.3    Claims Objection Deadline.** Objections to Claims shall be filed and served upon each affected Creditor no later than ninety (90) days after the Effective Date, provided however, that this deadline may be extended by the Bankruptcy Court upon motion of the Reorganized Debtor or the Class 5 Disbursing Agent, as applicable, with or without notice or hearing. Notwithstanding the foregoing, unless this Plan or an order of the Bankruptcy Court specifically provides for a later date, any proof of, or other assertion of a Claim filed after the deadline established for filing Claims of that type shall be automatically disallowed as a late filed Claim, without any action by the Reorganized Debtor or the Class 5 Disbursing Agent, as applicable, unless and until the party filing such Claim obtains the written consent of the Reorganized Debtor or the Class 5 Disbursing Agent, as applicable, or obtains an order of the Bankruptcy Court upon notice to the Reorganized Debtor that permits the late filing of the Claim. Moreover, the holder of such disallowed, late-filed Claim shall be forever barred from asserting such Claim against the Debtor, the Estate or the Reorganized Debtor, its property or the Class 5 pool Escrow or Class 5 Trust. In the event any proof of claim is permitted to be filed after the Confirmation Date pursuant to an order of the Bankruptcy Court or this Plan, the Reorganized Debtor or the Class 5 Disbursing Agent, as applicable shall have sixty (60) days from that bar date or the filing

of such proof of claim or order to object to such Claim, which deadline may be extended by the Bankruptcy Court upon motion of the Reorganized Debtor or Class 5 Disbursing Agent with or without notice or a hearing.

      **7.4**    **Settlement of Disputed Claims.**  The Reorganized Debtor (and the Class 5 Disbursing Agent) shall have authority to file, settle, compromise, withdraw, arbitrate or litigate objections to Claims. Objections to Claims may be litigated to judgment or withdrawn, and may be settled with the approval of the Bankruptcy Court, except to the extent such approval is not necessary as provided in this section. After the Effective Date, and subject to the terms of this Plan, the Reorganized Debtor and Class 5 Disbursing Agent may settle any Disputed Claim where the result of the settlement or compromise is an Allowed Claim in an amount of one hundred thousand dollars ($100,000.00), or less without providing any notice or obtaining an order from the Bankruptcy Court. All proposed settlements of Disputed Claims where the amount to be settled or compromised exceeds one hundred thousand dollars ($100,000.00) shall be subject to the approval of the Bankruptcy Court after notice and an opportunity for a hearing.

      **7.5**    **Reserves for Disputed Claims.**  Prior to the distribution to any applicable class or group of Claims, the Reorganized Debtor, or the Class 5 Disbursing Agent, as applicable, shall establish and maintain reserves for all Disputed Claims in (i) an amount equal to what would be distributed to holders of such Disputed Claims in the event that their Disputed Claims were deemed Allowed Claims on the Effective Date, or such applicable bar date, or (ii) such other lesser amount as may be agreed by the parties or approved by the Bankruptcy Court upon motion of the Reorganized Debtor; provided, however, that the Reorganized Debtor, or the Class 5 Disbursing Agent, as applicable, shall not be required to reserve funds on account of employee Claims for paid time off or vacation benefits of employees whose employment was continued by the Debtor or will be continued by the Reorganized Debtor (the "Disputed Claims Reserve"). With respect to such Disputed Claims, if, when, and to the extent any such Disputed Claim becomes an Allowed Claim by Final Order, the relevant portion of the Cash held in reserve therefore shall be distributed by the Reorganized Debtor, or the Class 5 Disbursing Agent, as applicable, to the Claimant in a manner consistent with distributions to similarly situated Allowed Claims. The balance of such Cash, if any, remaining after all such Disputed Claims, have been resolved and distributions made in accordance with the Plan, shall be released and distributed to the Reorganized Debtor, or the Class 5 Disbursing Agent, as applicable. No payments or distributions shall be made with respect to a Claim that is a Disputed Claim pending the resolution of the dispute by Final Order.

      **7.6**    **Petition Date Amount.**  Notwithstanding anything to the contrary in the Plan or elsewhere, there shall not be paid on account of any Claim an amount exceeding the Allowed Amount of such Claim as of the Petition Date. No payments or distributions shall be made with respect to post-Petition Date interest accruing on any Claim other than the DIP Claim and the Blue Wolf Pre-Petition Claim.

      **7.7**    **Distributions Subject to Setoff.**  The Debtor may, but shall not be required to, set off or recoup against any Allowed Claim or, if appropriate, the distributions to be made pursuant to the Plan on account of such Claim, claims of any nature that such Debtor may have against the holder of such Allowed Claim; provided, however, that (a) this provision shall not be

19

construed as a waiver of the benefit of section 502(d) of the Bankruptcy Code, and (b) neither the failure to effect such a setoff or recoupment on any occasion nor the allowance of any Claim shall constitute a waiver or release by the Debtor of any claim against any such holder.

**7.8    Distributions Subject to Withholding Taxes.**  The Debtor and the Class 5 Disbursing Agent are authorized to withhold from any distribution, and remit to the appropriate entity, such federal, state or local withholding taxes or other amounts as are required to be withheld under any applicable law.  Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder.  All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.

**7.9    Disputes Concerning Entitlement to Distributions.**  If a dispute arises as to the entity entitled to receive any distribution under the Plan, (a) the Debtor may retain such distribution until its disposition is determined by Final Order or by written agreement among all entities asserting a right to such distribution, (b) the Debtor may deduct from such distribution an amount equal to the fees and costs incurred by the Debtor on account of such dispute.

**7.10    Delivery of Distributions.**  Except as otherwise agreed in writing by the Debtor, or the Class 5 Disbursing Agent, as applicable, and the holder of a Claim, distributions to holders of Allowed Claims shall be made by check sent by first class mail with postage prepaid to each such holder at the address set forth in the timely filed proof of claim for such Allowed Claim or, if no proof of claim has been timely filed, the address set forth in the Schedules, <u>provided</u> that if the Debtor or the Class 5 Disbursing Agent receives notice in writing of a change of address for any such holder or notice in accordance with Bankruptcy Rule 3001(e) of the transfer of a Claim, then effective not more than ten (10) days thereafter, the Debtor or Class 5 Disbursing Agent shall remit distributions to the new address or transferee set forth in such notice.

**7.11    Time Bar to Cash Payments.**  All checks shall be deposited in the mail not later than five (5) Business Days after the date of the check.  If any distribution on account of a Claim is returned to the Reorganized Debtor as undeliverable, or if a check in payment of the distribution on account of a Claim remains uncashed ninety (90) days after the date of such check and the Reorganized Debtor has not within such ninety (90) day period received notice of a new address for the holder of such Claim, then (a) the check will be voided, (b) the amount of the uncashed distributions to such holder shall otherwise shall become unrestricted cash of the Reorganized Debtor, and (c) notwithstanding any other provision of the Plan, such Claim shall be treated as Disallowed for purposes of computing future distributions, such that no further distributions shall be made on account of such Claim.

**7.12    Late-Filed Claims and Amendments.**  Each Claim as to which a proof of claim was required to be filed on or before the Bar Date and as to which a proof of claim was not filed on or before the applicable Bar Date shall be Disallowed without need for entry of an Order.  A proof of claim that has not been timely filed shall be of no force or effect whatsoever, including for purposes of any distribution made by the Debtor; nor shall any action (including issuance of an invoice, giving notice to the Debtor or otherwise making an "informal" proof of claim) serve for purposes of the Plan and distributions required of the Debtor as a substitute for timely filing a

proof of claim. In no event shall the Allowed Amount of any Claim exceed the amount set forth in a proof of claim therefore filed on or before the applicable Bar Date except to the extent that the claimant has obtained prior to entry of the Confirmation Order, on notice to the Debtor, an Order permitting the filing of an amended proof of such Claim increasing the amount thereof. After entry of the Confirmation Order, no Order allowing or disallowing a Claim may be reconsidered, pursuant to section 502(j) of the Bankruptcy Code or otherwise, so as to increase the Allowed Amount thereof.

7.13    **Finality of Allowance or Disallowance.**    Each holder of a Claim, and each successor or assign of any such holder, shall be (a) fully bound by the determination of such Claim as Allowed or Disallowed, and the determination of the Allowed Amount of such Claim, pursuant to the terms of the Plan, and (b) barred from asserting against or attempting to collect from the Debtor or any other person on account of such Claim (or any derivative debt or liability) an amount exceeding the Allowed Amount of such Claim determined pursuant to the terms of the Plan.

7.14    **Fractional Cents.**    Any other provision of this Plan to the contrary notwithstanding, no payment of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

7.15    **Payments of Less Than Fifty Dollars.**    If a cash payment otherwise provided for by this Plan with respect to an Allowed Claim would be less than fifty dollars ($50.00) (whether in the aggregate or on any payment date provided in this Plan), notwithstanding any contrary provision of this Plan, the Reorganized Debtor and the Class 5 Disbursing Agent, shall not be required to make such payment and such funds shall be otherwise distributed to holders of Allowed Claims in such Class in accordance with the Plan, or if all Allowed Claims in such Class have been satisfied or reserved for in accordance with the Plan, then such excess fractional dollars will be distributed to the Reorganized Debtor.

# ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1    **Rejection of All Agreements.**    Any and all pre-petition leases or executory contracts not (i) previously assumed by the Debtor or the subject of a pending motion to assume of the Bankruptcy Court pending on the Confirmation Date, (ii) previously rejected or the subject of a pending motion to reject pending on the Confirmation Date, or (iii) designated on the Plan Supplement to this Plan, shall be deemed rejected by the Debtor effective as of the Confirmation Date, but subject to the occurrence of the Effective Date. The Plan Supplement shall be filed on or before the hearing on the Disclosure Statement and served upon the non-Debtor parties to the contracts and leases, and shall include the Cure Claim that the Debtor believes will be payable as of the Effective Date for each contract and lease thereon. The Debtor shall have the right to modify the Plan Supplement up to seven (7) days prior to the Confirmation Hearing, by filing a

21

modified schedule with the Bankruptcy Court and serving the modified Plan Supplement upon any counter-party that is added to or deleted from the schedule.

**8.2    Bar Date for Cure Claims.** Unless otherwise ordered by the Bankruptcy Court, if a non-Debtor party to an executory contract or unexpired lease listed on the Plan Supplement disagrees with the Cure Claim shown thereon for its executory contract or unexpired lease, a Cure Claim must be filed with the Bankruptcy Court and served on the Debtor and its counsel so as to be received at least five (5) days prior to the Confirmation Hearing (the "Cure Claims Bar Date"). Any Person that is a non-Debtor party to an executory contract or unexpired lease on the Plan Supplement that fails to timely file and serve a Cure Claim shall be bound by the amount shown by the Debtor and shall be forever barred, estopped and enjoined from asserting any other or additional Cure Claim and no objection to a late claim shall be necessary. Within ten (10) days after the Effective Date, all undisputed Cure Claims due and owing under any assumed contracts or leases shall be paid, and all Cure Claims that are the subject of dispute shall be paid upon further agreement of the parties or upon entry of an order of the Bankruptcy Court allowing such Cure Claims. No portion of any disputed Cure Claims shall be paid unless and until the amount of such Claim is fixed by agreement of the parties or order of the Bankruptcy Court.

**8.3    Insurance Policies.** Notwithstanding the foregoing, on the Effective Date, all insurance policies (regardless of the inception date of coverage) for the Debtor which provide for any and all Claims made or occurred arising from or related to any environmental laws of any Federal, State or local governmental entity or any claim asserted by a non-governmental entity for environmental claims (directly or by way of indemnity and whether under contract or tort law) shall be deemed assumed by the Reorganized Debtor. Any motion filed to assume contracts or the Plan Supplement shall contain the Cure Claims required to be paid upon assumption and all contracting parties shall have ten (10) days from the filing of the motion to assume, or in the case of policies included on the Plan Supplement, until the Cure Claims Bar Date within which to object to the stated Cure Claims or thereafter be deemed to have waived the right to object to the same.

**8.4    Claims for Rejection Damages.** All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases shall, unless another order of the Bankruptcy Court provides for an earlier date, be filed with the Reorganized Debtor within thirty (30) days after the mailing of the notice of the Effective Date. All proofs of claim with respect to Claims arising from the rejection of executory contracts and unexpired leases shall be treated as Class 5 General Unsecured Claims, as applicable, for purposes of a distribution pursuant to the Plan, unless and until the Person or Entity asserting such Claim obtains an order of the Bankruptcy Court upon notice to the Debtor, that allows the Claims in another Class under the Plan. Unless otherwise permitted by Final Order, any proof of claim that is not filed before the earlier of the Bar Date or the Confirmation Hearing (other than those Claims arising from the rejection of executory contracts or unexpired leases which may be filed within thirty (30) days of the notice of the Effective Date as set forth above) shall automatically be disallowed as a late filed Claim, without any action by the Reorganized Debtor or the Class 5 Disbursing Agent, and the holder of such Claim shall be forever barred from asserting such Claim against the Debtor, the Estate, the Reorganized Debtor, or property of the Reorganized Debtor, the Class 5 Pool Escrow or the Class 5 Trust.

## ARTICLE IX

## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE

**9.1    Conditions Precedent to Confirmation of the Plan.** The Plan shall not be confirmed unless and until the following conditions have been satisfied in full or waived by the Debtor and Blue Wolf:

(a)    The Confirmation Order shall be in form and substance satisfactory to the Debtor and Blue Wolf, which Confirmation Order shall approve all provisions, terms and conditions of the Plan;

(b)    No amendments, modifications, supplements or alterations shall have been made to the Plan or any document delivered in connection therewith, without the express written consent of the Debtor and Blue Wolf (which consent may be granted, withheld, or conditioned in their respective sole discretion);

(c)    Execution of new Collective Bargaining Agreements in form and substance satisfactory to the Debtor and Blue Wolf which shall not increase the amount of General Unsecured Claims; and

(d)    The Debtor shall have entered into a new lease for the Dory Road Property satisfactory to Blue Wolf, which new lease shall not increase the amount of General Unsecured Claims.

**9.2    Conditions Precedent to Effectiveness of the Plan.** This Plan shall not become effective, and the Effective Date shall not occur, unless and until each of the following conditions shall have been satisfied or waived by the Debtor, Blue Wolf, and the Committee:

(a)    The Confirmation Order, in form and substance acceptable to the Debtor and Blue Wolf, shall have been entered by the Bankruptcy Court;

(b)    The Confirmation Order shall have become a Final Order; and

(c)    All actions, other documents and agreements necessary to implement the Plan shall have been executed, delivered and, if necessary, properly recorded, and shall have become effective;

(d)    The Debtor shall have sufficient funds, including funds provided by the Exit Facility, to effectuate the terms of the Plan; and

(e)    The Debtor shall file a Plan Supplement in a form acceptable to the Debtor, Blue Wolf, and the Committee.

23

**9.3    Waiver of Conditions to Confirmation or Effective Date.**  The conditions set forth in Sections 9.1 and 9.2 of this Plan may be waived, in whole or in part, by the Debtor and Blue Wolf (provided, however, that the condition set forth in Section 9.1(d) may be waived by Blue Wolf in its sole and absolute discretion) without any notice to any other parties in interest (except the Committee) or the Bankruptcy Court and without a hearing.  The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by the Debtor and Blue Wolf in their sole discretions regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtor and Blue Wolf in their sole discretion).  The failure of the Debtor or Blue Wolf to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right which may be asserted at any time.

**9.4    Effect of Non-occurrence of Conditions to the Effective Date.**  If consummation of the Plan and thus the Effective Date do not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor, or (b) prejudice in any manner the rights of the Debtor, or constitute an admission, acknowledgement, offer or undertaking by the Debtor

## ARTICLE X

## RETENTION OF JURISDICTION

**10.1**    Following the Confirmation Date and until such time as all payments and distributions required to be made and all other obligations required to be performed under this Plan have been made and performed by the Reorganized Debtor, the Bankruptcy Court shall retain jurisdiction as is legally permissible, including, without limitation, for the following purposes:

(a)    Claims.  To determine the allowance, extent, classification, or priority of Claims against the Debtor upon objection by the Reorganized Debtor, the Class 5 Disbursing Agent or any other party in interest, including any and all claims asserted under any Collective Bargaining Agreements, as amended;

(b)    Injunctions, etc.  To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Case on or before the Effective Date with respect to any Person or Entity;

24

(c)  Professional Fees.  To determine any and all applications for allowance of compensation and expense reimbursement of Professionals for periods before the Effective Date, and objections thereto, as provided for in the Plan;

(d)  Dispute Resolution.  To resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan and/or Confirmation Order and the making of distributions hereunder and thereunder;

(e)  Executory Contracts and Unexpired Leases.  To determine any and all motions for the rejection, assumption, or assignment of executory contracts or unexpired leases, and to determine the allowance and extent of any Claims resulting from the assumption or rejection of executory contracts and unexpired leases;

(f)  Actions.  To determine all applications, motions, adversary proceedings (including any Avoidance Actions and/or Estate Actions), contested matters, actions, and any other litigated matters instituted (either before or after the Effective Date) in the Chapter 11 Case by or on behalf of the Debtor, the Reorganized Debtor or the Class 5 Disbursing Agent;

(g)  General Matters.  To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code or other applicable law;

(h)  Plan Modification.  To modify the Plan under section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes;

(i)  Aid Consummation.  To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person or Entity, to the fullest extent authorized by the Bankruptcy Code, including, without limitation, resolve any disputes of a non-Debtor hereunder or the injunction against acts, employment of process or actions against such non-Debtor arising hereunder;

(j)  Protect Property.  To protect the Property of the Debtor and the Reorganized Debtor from adverse Claims or Liens or interference inconsistent with this Plan, including to hear actions to quiet or otherwise clear title to such property based upon the terms and provisions of this Plan or to determine a purchaser's exclusive ownership of claims and causes of actions retained under this Plan;

25

(k)    <u>Abandonment of Property</u>.  To hear and determine matters pertaining to abandonment of Property of the Estate;

(l)    <u>Implementation of Confirmation Order</u>.  To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(m)    <u>Final Order</u>.  To enter a final order closing the Chapter 11 Case; and

(n)    <u>Tax Liability</u>. To determine any tax liability pursuant to section 505 of the Bankruptcy Code.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

**11.1    Effect of Plan and Disclosure Statement.**  In the event that there is any inconsistency or conflict between the Plan and Disclosure Statement, the terms of the Plan shall control.  The provisions of the Plan shall bind all holders of Claims, whether or not they accept the Plan, and any successors and assigns to such holders of Claims.  Entry of the Confirmation Order shall be deemed to be a determination by the Court only as to the matters expressly set forth therein and not as to any other matter involving the Debtor, its estate and any party-in-interest in the case.  No action or omission in relation to the Plan (including but not limited to solicitation of acceptances of the Plan, statements contained in or omitted from the disclosure statement therefor, entry of the Confirmation Order or occurrence of the Effective Date) shall serve to bar, whether by *res judicata*, collateral estoppel, judicial estoppel or otherwise, the prosecution of any action by or on behalf of the Debtor or the Reorganized Debtor.  Without limiting the generality of the foregoing, with respect to contested matters, adversary proceedings, and other pending, threatened, or potential actions (whether or not pending), the Plan, the Disclosure Statement therefore and the information contained therein shall not be construed as an admission or stipulation by any entity, but rather as statements made in settlement negotiations governed by Rule 408 of the Federal Rules of Evidence and any other rule or statute of similar import.  Furthermore, the absence of pending litigation and/or the absence of disclosure or notice of any cause of action, affirmative claim, counterclaim or avoidance action by such Disclosure Statement or otherwise may not be relied upon by any holder of a Claim as an indication, representation, or acknowledgement that such cause of action, affirmative claim, counterclaim, or Avoidance Action does not exist or that such claims will not be pursued following confirmation of the Plan.  Moreover, nothing in the Plan or the Disclosure Statement therefor may be used or relied upon by any entity as a basis to assert that the Debtor or the Reorganized Debtor has waived any cause of action, affirmative claim, counterclaim, or avoidance action, all of which are hereby expressly preserved.

**11.2    Exemption From Certain Transfer Taxes.**  Pursuant to section 1146(c) of the Bankruptcy Code, (a)  the issuance, transfer, or exchange of notes or equity securities under the Plan; (b)  the creation of any mortgage, deed of trust, lien, pledge, or other security interest; (c) the making or assignment of any contract, lease or sublease; or (d)  the making or delivery of any

26

deed or other instrument of transfer under, in the furtherance of, or in connection with, the Plan, including, without limitation, any merger agreements, agreements of consolidation, restructuring, disposition, liquidation, or dissolution, stock purchase agreements, stockholders agreements or stockholders rights agreements; deeds, bills of sale, or transfers of tangible property, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

     **11.3    Discharge.**  Except as otherwise provided for in this Plan, the Confirmation Order, or any other order of the Bankruptcy Court (including, without limitation, the Final DIP Order), in accordance with section 1141(d) of the Bankruptcy Code, entry of the Confirmation Order acts as a discharge effective as of the Effective Date of all debts, Claims against, Liens on, and Interests in the Debtor, its assets and Property, which debts, Claims, Liens and Interests arose at any time before the entry of the Confirmation Order.  The discharge of the Debtor shall be effective as to each Claim and Interest, regardless of whether a proof of Claim or Interest was filed or whether the Claim or Interest was Allowed or whether the holder of the Claim or Interest votes to accept the Plan.  On the Effective Date, as to each and every discharged Claim and Interest, any holder of such Claim or Interest shall be precluded from asserting such Claim or Interest against the Debtor or the Reorganized Debtor or its assets or properties.

     **11.4    Confirmation Injunction.**  On and after the Confirmation Date, except to enforce the terms and conditions of the Plan before the Bankruptcy Court, or as permitted under the Exit Facility, all Persons or Entities who have held, hold or may hold any Claim against or Interest in the Debtor or the Committee are, with respect to any such Claim or Interest, permanently enjoined from and after the Confirmation Date from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against the Reorganized Debtor, the Committee, Class 5 Disbursing Agent or the Class 5 Trust or any of its properties, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons or Entities and all of their respective direct and indirect parents, subsidiaries and affiliates, together with each of their respective shareholders, members, managers, general partners, limited partners officers, directors, employees, agents, representatives, attorneys and advisors or consultants or any property of any of the foregoing (collectively, the "Protected Parties"); (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means whether directly or indirectly, against any of the Protected Parties of any judgment, award, decree or order; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against any of the Protected Parties; (d) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due to any of the Protected Parties; and (e) taking any actions in any place and in any manner whatsoever that do not conform to or comply with the provisions of the Plan. Nothing in this section shall preclude the Reorganized Debtor from asserting Avoidance Actions or Estate Actions or continuing to pursue Avoidance Actions or Estate Actions.

**11.5    Cancellation of Existing Indebtedness and Liens.**  Except as may otherwise be expressly provided in this Plan, on the Effective Date: (a) all credit agreements, promissory notes, mortgages, security agreements, invoices, contracts, agreements and any other documents or instruments evidencing Claims against the Debtor, together with any and all liens securing same, shall be canceled, discharged and released without further act or action by any Person under any applicable agreement, law, regulation, order or rule, (b) the obligations of the Debtor thereunder shall be deemed cancelled, discharged and released, and (c) all of the right, title and interest of any holder of such mortgages, deeds of trust, liens or other security interests, including any rights to any collateral thereunder, will revert to the Reorganized Debtor.  To the extent deemed necessary or advisable by the Reorganized Debtor, any holder of a Claim shall promptly provide the Reorganized Debtor with an appropriate instrument of cancellation, discharge or release, as the case may be, in suitable form for recording wherever necessary to evidence such cancellation, discharge or release, including the cancellation, discharge or release of any lien securing such Claim.

**11.6    Amendment or Modification of Plan.**  The Debtor may revoke and withdraw the Plan at any time.  Upon the written consent of Blue Wolf, the Debtor may propose amendments to or modifications of the Plan under section 1127 of the Bankruptcy Code, at any time prior to entry of the Confirmation Order.  After entry of the Confirmation Order, upon the written consent of Blue Wolf, the Debtor may modify the Plan under Code Section 1127 and may, with the Court's approval, remedy any defects or omissions or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and intent of the Plan so long as the interests of holders of Claims are not materially and adversely affected.

**11.7    Bar Against Setoff, Recoupment, etc.**  Except as permitted in any particular instance by Order entered prior to the Confirmation Order, no right of setoff or recoupment, nor any other remedy that would reduce any amount due to or the value of any asset held by the Debtor may be exercised against the Debtor or any asset thereof, other than customers and vendors having provided deposits in the ordinary course of business.

**11.8    Exculpations.**  Neither the Debtor, the Reorganized Debtor, the Committee, or Blue Wolf, or any of their respective direct and indirect parents, subsidiaries and affiliates, together with each of their respective present and former shareholders, members, managers, general partners, limited partners, officers, directors, employees, agents, representatives, attorneys and advisors or consultants or their successors or assigns, shall have or incur any liability to any holder of a Claim or Equity Interest, nor to any other party in interest or their respective agents, employees, representatives, financial advisors, attorneys or affiliates or any of their successors or assigns, for any act, event or omission in connection with, relating to, or arising out of the administration of this Chapter 11 bankruptcy proceeding, the pursuit of confirmation of the Plan, the Disclosure Statement, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, provided that, (a) the terms of this Section 11.8 of the Plan shall not apply to any liability of any entity for its breach of fiduciary duty, bad faith, willful misconduct, or negligence, and (b) nothing herein exculpates the Debtor, the Reorganized Debtor or its agents from effectuating the Plan.

28

**11.9  Preservation of Insurance.** This Plan shall not diminish or impair the enforceability of any insurance policy, right or claim that may cover Claims against the Debtor or the Reorganized Debtor (including, without limitation, their members, managers or officers) or any other person or entity. Likewise, the Plan and Confirmation Order shall not impair any insurance carrier's rights, claims, defenses or disputes under any policy and shall not act to increase or extend any rights of the Debtor or the carriers.

**11.10  Cramdown.** To the extent any Impaired Class of Claims entitled to vote on the Plan votes to reject the Plan, the Debtor reserves the right to request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to such Class(es).

**11.11  Governing Law.** Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Massachusetts.

**11.12  Notices.** Any notice required or permitted to be provided under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

| | |
|---|---|
| If to the Debtor: | Gloucester Engineering Co, Inc.<br>11 Dory Road<br>Gloucester, Massachusetts 01930<br>Attn: John Sharood, Chairman |
| with a copy to: | Hanify & King, P.C.<br>One Beacon Street<br>Boston, Massachusetts 02108<br>Attn: Charles R. Bennett, Jr., Esq. |
| If to the Reorganized Debtor: | Gloucester Engineering Co., Inc.<br>11 Dory Road<br>Gloucester, Massachusetts 01930<br>Attn: Carl Johnson, President |
| with a copy to: | Hanify & King, P.C.<br>One Beacon Street<br>Boston, Massachusetts 02108<br>Attn: Charles R. Bennett, Jr., Esq. |
| If to Blue Wolf: | Blue Wolf Equipment Holdings, LLC<br>48 Wall Street, 31st Floor<br>New York, New York 10005<br>Attn: Michael Ranson |

| with a copy to: | Greenberg Traurig, LLP<br>One International Place<br>Boston, Massachusetts 02110<br>Attention: Jeffrey M. Wolf, Esq. |
| --- | --- |
| If to the Committee: | Nixon Peabody, LLP<br>100 Sumner Street<br>Boston, Massachusetts 02110<br>Attn: Mark N. Berman, Esq. |

**11.13  Saturday, Sunday or Legal Holiday.**  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**11.14  Time Computation.**  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**11.15  Severability.**  If any term or provision of the Plan is held by the Bankruptcy Court prior to or at the time of Confirmation to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted.  In the event of any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan may, at the Debtor's and Blue Wolf's option, remain in full force and effect and not be deemed affected.  However, the Debtor and Blue Wolf each reserve the right not to proceed to Confirmation or consummation of the Plan if any such ruling occurs.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.  Except as set forth in the preceding sentence, the Plan shall be construed as a single integrated agreement.

**11.16  Headings.**  Headings are utilized in the Plan for convenience only and shall not constitute a part of the Plan for any other purpose nor in any manner affect provisions of the Plan.

**11.17  Construction.**  The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to construction of the Plan.

**11.18  Controlling Effect of the Plan.**  To the extent that the terms of this Plan are inconsistent with the terms of the Disclosure Statement or any agreement or instrument concerning any Claim, the terms of the Plan shall govern.

**11.19  Successors and Assigns.**  The rights, benefits and obligations of any Person or Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person or Entities.

**11.20  Dissolution and Release of the Committee.**  Upon ten (10) days after the later of (i) the Effective Date and (ii) the Confirmation Order becoming a Final Order, the Committee will dissolve and the members of the Committee shall be released and discharged from their duties.

Dated: November 16, 2010                          HANIFY & KING, P.C.


                                                  By:___ /s/ Andrew G. Lizotte_____
                                                  Charles R. Bennett, Jr. BBO 037380
                                                  Andrew G. Lizotte BBO 559609
                                                  Christopher M. Condon BBO 652430
                                                  One Beacon Street
                                                  Boston, MA  02108
                                                  (617) 423-0400
                                                  Email: agl@hanify.com
                                                  Counsel for Gloucester Engineering Co., Inc.

581411

31

**EXHIBIT A TO**
**DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION**



48 Wall Street, 31st Floor
New York, NY 10005
t: 212.488.1340
f: 917.677.8233

**BLUEWOLF**
CAPITAL FUND II, L.P.

September 14, 2010

Mr. John Sharood
Chief Executive Officer
Gloucester Engineering Company, Inc.
11 Dory Road
Gloucester, MA 01930

Mr. Sharood:

In accordance with our role as the sponsor of Gloucester Engineering's ("GEC" or "the Company") Plan of Reorganization, below is an outline of the terms of the credit facilities that Blue Wolf is prepared to make available to the Company in order to fund its emergence from bankruptcy and future operations.

**Revolving Credit Facility**

| | |
|---|---|
| Borrower | Gloucester Engineering Corporation |
| Amount | $7,500,000 |
| Maturity Date | Three Years after Closing |
| Interest Rate | 8.00% paid in cash in arrears |
| Unused Line Fee | 0.50% |
| Closing Fee | NA |
| Collateral | A first lien on all assets of the Borrower |
| Advance Rates | 85% of eligible Accounts Receivable; 65% of eligible Inventory |

**Term Loan Facility**

| | |
|---|---|
| Borrower | Gloucester Engineering Corporation |
| Amount | An amount equal to the outstanding balance under the Borrower's DIP Loan. |
| Maturity Date | Four Years after Closing |
| Interest Rate | 10.00% payable in cash or "in kind" (at the Company's option) in arrears |
| Closing Fee | NA |
| Collateral | A second lien on all assets of the Borrower |

Sincerely,

Michael Ranson